[Civil No. 1567.   Filed January 27, 1917.]

[162 Pac. 882.]

## THOMAS E. CAMPBELL, Plaintiff, v. GEORGE W. P. HUNT, Defendant.

1. ELECTIONS—TITLE TO OFFICE—GOVERNOR.—Under the Constitution and laws of Arizona, the title to the office of Governor is given by the fact of election by the highest number of legal votes; the declaration of result and issuance of certificate of election being but evidence thereof, which may be contradicted.

2. ELECTIONS—MANDAMUS—QUO WARRANTO—DETERMINATION OF RIGHT TO OFFICE.—Under Civil Code of 1913, paragraph 1553, authorizing *mandamus* to compel the admission of a party to an office to which he is entitled and from which he is unlawfully precluded, etc., questions concerning conflicting claims to the office, such as who received the highest number of legal votes therefor, eligibility and qualification of candidates, and expiration of term of incumbent, are foreign to the scope of *mandamus*, and must be determined either in election contest, under Civil Code of 1913, paragraphs 3060–3070, or by *quo warranto*, under Civil Code of 1913, paragraphs 1596–1602.

3. MANDAMUS—SCOPE OF REMEDY.—The writ of *mandamus* issues of right, but not as a matter of course, and is not, except in a limited sense, prerogative in character.

4. MANDAMUS—SCOPE OF REMEDY.—*Mandamus* does not issue where there is a plain, speedy and adequate remedy in the ordinary course of law, and ought not to issue as a matter appealing to the legal discretion of the court when the applicant does not substantially demonstrate the propriety and justice of his case.

5. MANDAMUS—SCOPE OF REMEDY.—*Mandamus* is an extraordinary and expeditious legal remedy, which proceeds in every case upon the assumption that the applicant has an immediate and complete legal right to the thing demanded.

6. MANDAMUS—TEMPORARY POSSESSION OF OFFICE—PRIMA FACIE ELEC-
TION.—Under Civil Code of 1913, paragraph 1553, as to *mandamus*
to compel the admission of a party to the use and enjoyment of
an office to which he is entitled and from which he is unlawfully
precluded, the writ issues to give to a candidate, *prima facie* en-
titled to office by canvass and certificate of election, temporary
possession of such office as a *de facto* officer, pending and without
awaiting the result of proceedings by *quo warranto* or election con-
test; there being no speedy or adequate remedy at law.

7. ELECTIONS—CONSTITUTIONAL PROVISION—DUTY OF SECRETARY OF
STATE.—Under Constitution, article 5, section 11, providing that
"the returns of the election for all state officers shall be canvassed,
and certificates of election issued by the Secretary of State, in
such manner as may be provided by law," the duty of the secre-
tary to canvass and issue certificates of election cannot be taken
away by the legislature, although the legislature might provide
for the form and contents of the certificate and the manner of its
execution.

8. CONSTITUTIONAL LAW—SELF-EXECUTING PROVISIONS.—If a constitu-
tional provision directly imposes a duty on an officer, no legisla-
tion is necessary to require the performance of such duty.

9. ELECTIONS—CERTIFICATE OF ELECTION—EFFECT.—The acts of the
Secretary of State, under Constitution, article 5, section 11, in
canvassing returns, declaring the result, and delivering a certificate
of election to a candidate for Governor, gives such candidate, if
not shown to be disqualified, a *prima facie* right to be admitted
temporarily to the office, until reversed or set aside by a court
of proper jurisdiction in appropriate proceedings.

10. STATES — CONSTITUTIONAL OFFICER — GOVERNOR. — The qualifications
for Governor being specifically detailed in the Constitution, the
legislature is powerless to add to or detract from the qualifications
prescribed.

11. STATES—STATE TAX COMMISSION—CONSTITUTIONAL PROVISIONS.—
POWER OF LEGISLATURE.—Members of the state tax commission are
not constitutional officers, but the commission is a creature of the
legislature, which has absolute power over it, and may pre-
scribe what qualifications its members shall possess, when vacan-
cies shall occur, or may abolish it entirely.

12. OFFICERS—TAX COMMISSIONER—ELIGIBILITY TO OFFICE.—Civil Code
of 1913, paragraph 4822, providing that no tax commissioner shall
hold any other office, does not prohibit him from holding any
other position of trust or profit during his term of office, but the
effect of the provision is that if a member of the tax commission
does so, he, by that very act, vacates his office as tax commissioner;
Civil Code of 1913, paragraphs 220, 221, as to resignations and
requiring acceptance thereof not applying, since the general terms

of those statutes are controlled by the particular terms of paragraph 4822.

13. OFFICERS—ACCEPTANCE OF SECOND OFFICE.—The holding of one office does not render the incumbent ineligible to another; but the acceptance of a second office, when prohibited, *ipso facto* absolutely vacates the first office.

14. ELECTIONS—CERTIFICATE OF SECRETARY OF STATE—PRIMA FACIE EVIDENCE.—Under Constitution, article 5, section 11, as to the issuing of a certificate of election by the Secretary of State, the canvass and certificate are no evidence of who was in truth elected; but they are *prima facie* evidence of the result, and constitute the highest evidence of the *prima facie* title that the law requires.

15. MANDAMUS—COMPELLING DELIVERY OF OFFICE—OFFICER HOLDING OVER.—The rule as to issuance of *mandamus* to compel the delivery of official belongings of a public office to a successor holding *prima facie* title applies to one holding over in a contest between himself and a person declared elected as his successor.

16. MANDAMUS—RIGHT TO EMOLUMENTS OF OFFICE—OBEDIENCE TO MANDAMUS TO YIELD OFFICE.—One holding over and yielding his office in obedience to *mandamus* to one *prima facie* entitled thereto, pending outcome of election contest, loses no rights by such course, not even salary and emoluments of the office while out of possession, since the one holding under *prima facie* title is a mere *de facto* officer.

17. MANDAMUS — ENFORCEMENT AGAINST GOVERNOR. — In *mandamus* proceedings, where a candidate for Governor was held entitled to temporary possession of the office of Governor as *de facto* officer pending the outcome of election contest, the writ would not issue instantly against the Governor holding over, since it would be presumed that the latter would yield such temporary possession upon being advised of the decision of the court.

[As to whether *mandamus* may be issued against Governor of states, see notes in 33 Am. Dec. 361; 31 Am. St. Rep. 294.]

Original petition for Writ of Mandamus. Plaintiff held entitled to writ.

Mr. R. E. Sloan, Mr. J. L. Gust, Messrs. Bullard & Jacobs, and Mr. John H. Campbell, for Plaintiff.

Mr. Eugene S. Ives and Mr. Frank E. Curley, for Defendant.

FRANKLIN, C. J.—The inquiry involved in this proceeding imposes upon the court the duty of determining which

one of two persons, being rival claimants, respectively, to the office of Governor of this state, shall be recognized and given temporarily the status of a *de facto* officer. It goes no further. This solemn duty may not, in the popular comprehension, be entirely dissociated from a political aspect, but in this court it is, in its very essence, viewed strictly as a judicial question proper for the judgment of the court. The equity of the court must from the most trivial to the most solemn occasions be strict, even to apparent severity, whence partiality and prejudice are totally to be excluded, and the true state of the law alone, so far as it may have the light to discern it, preside in its tongue. To this end we must give it that same patient and conscientious attention, before pronouncing judgment, that every case presented in this court deserves, no matter what the matter involved. That must be our purpose. The conduct of affairs in Arizona is practically in the hands of majorities, and accordingly the right to vote, the conditions under which the right can be exercised, the qualifications of the voters and the officers for whom they vote, the safeguards against an improper exercise of the franchise, the laws under which elections are held, the results determined, corrected or set aside, and the effect thereof, the penalties imposed on those who abuse the system, and above all the nature of the tribunals to whom the decision of all these matters is committed—all these things must, or ought to be, of vital importance to every thoughtful citizen and lawmaker. This to a degree no whit less than the deep concern of those charged with the direct responsibility of the exposition of the laws as they exist with such implements as may be at hand, and the application of the principles underlying those laws to the ascertained facts of this case.

Abridging much that is in the papers before us, but, as I take it, omitting nothing of the uncontroverted facts that is essential to dispose of the application, the plaintiff claims: That a general election was held on November 7, 1916, at which election he and defendant were rival candidates for the office of Governor, their respective names so appearing upon the regular ballot, and each was thus voted for by large numbers of the qualified electors of the state. That the election officers in the various election precincts of each county canvassed the votes and made tabulations and returns of the

results of such canvass to the respective boards of supervisors of the various counties in the state. That the boards of supervisors each made a canvass of such returns so transmitted to them and did declare the result of said canvass. That said boards of supervisors did thereafter transmit the respective results of their canvass to the Secretary of State of Arizona, and in so doing did transmit to the secretary their canvass of the returns at said election in their respective counties for the office of Governor as canvassed and counted by said election officers, and as canvassed by said respective boards of supervisors. That the Secretary of State thereupon, and on the sixth day of December, 1916, canvassed the said returns for the office of Governor, and did declare that plaintiff, Thomas E. Campbell, received for the office of Governor at said election the highest number of votes given to any candidate for that office, and did declare the said Thomas E. Campbell elected to the said office of Governor, and did issue to him a certificate of election, certifying and declaring the said Thomas E. Campbell to be elected at said general election to the office of Governor of the state of Arizona, the certificate being under the hand of the Secretary of State and under the seal of the state of Arizona. That plaintiff is eligible under the Constitution and laws of Arizona to be elected and hold the office of Governor, and has qualified by taking the oath of office prescribed by the law. That upon demand the defendant unlawfully precluded the plaintiff from his right or office to which he is entitled.

Under this state of facts and in this proceeding it is the contention of plaintiff that he has shown *prima facie* his right to be recognized as the officer clothed with the power to discharge temporarily the necessary duties of the office of Governor, and to obtain possession of the books, records, and property pertaining to the office, until it may be determined in an appropriate proceeding who is the real Governor of the state.

The defendant does not deny the facts as above substantially set forth, but he does challenge the legal effect of such facts. Further, to overcome the case made by the plaintiff, the defendant shows: That in the year 1914 he was legally elected Governor for the definite and fixed term of two years from the first Monday in January, 1915, with a further term

contingent on the election and qualification of his successor, and he is now in possession of the office and performing its duties because such contingency has not happened, to wit, that no person has been legally elected and qualified as his successor. That plaintiff is disqualified from holding the office of Governor. That a contest is now pending in the superior court of Maricopa county, having jurisdiction thereof, wherein the defendant is the contestant and the plaintiff the contestee, and wherein the person receiving the highest number of legal votes and the ultimate title to the office of Governor will be definitely determined. That so far as such contest has progressed the defendant verily believes and asserts the fact to be that it is shown that he has received the highest number of legal votes cast at said election for the office of Governor, and that under the law and of right and justice he is the lawful Governor of the state, and ought to be recognized as such until there be a final judicial determination otherwise.

It is true beyond the peradventure of a doubt that the person who received the largest number of legal votes cast for the office of Governor is the lawful Governor of this state. Such person is now and always will be such until the term prescribed by law expires or a vacancy occurs. Under the Constitution and laws of this state, the real right or title to the office comes from the will of the voters as expressed at the election. If the office was in fact given by the voters to another, the mere canvass of the returns and declaration of the result and the issuance of a certificate of election—any or all these things—do not and cannot invest one with the right which belongs to another. In this sense, if one has not the right and the real title, he holds unlawfully, though he may be recognized for a time as the officer *de facto;* it being the fact of election by the highest number of legal votes which gives title to the office, and this fact may be established, not only without, but against, the declaration of the result and the evidence of the certificate based thereon. There are two ways of doing this. Under chapter 14 of title 12, Revised Statutes of 1913, any elector of the state may contest the election of any person who is declared elected to a state office. Under chapter 8 of title 6, Revised Statutes of 1913, it is made the duty of the Attorney General to bring

an action in *quo warranto* whenever he has reason to believe that any public office has been usurped, intruded into, or unlawfully held or exercised, and a private person claiming a public office may exercise the writ of *quo warranto* to try his title to the office, provided he first obtains permission of the court. Here we have two methods provided for trying the title to a public office, two methods for determining who is the real and lawful Governor of the state when a dispute arises thereabout, and in either method pursued the successful party must show that he has received the highest number of legal votes for the office, that he was eligible to the election and has duly qualified, and that the term of an incumbent, if any, has legally expired.

Such matters concerning conflicting claims to the legal or ultimate title to office, however, are foreign to the scope and purpose of *mandamus.* Paragraph 1553, Revised Statutes of 1913, provides:

"1553. The writ of *mandamus* may be issued by the supreme or superior court to any inferior tribunal, corporation, board (whether the Governor is a member of such board or not) or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person."

This statute is the basis of the present application. The writ hereunder is not, except in a limited sense, prerogative in character. I think it may accurately be said that it issues of right, but not as a matter of course. It does not issue where there is a plain, speedy and adequate remedy in the ordinary course of law, and ought not to issue as a matter appealing to the legal discretion of the court, when the applicant does not substantially demonstrate the propriety and justice of his case. It is rather an extraordinary and expeditious legal remedy, which proceeds in every case upon the assumption that the applicant has an immediate and complete legal right to the thing demanded. If the applicant here has shown an immediate and complete legal right to be admitted temporarily to the office of Governor, and there are no compelling circumstances to frustrate it, then he has sub-

stantially demonstrated the propriety and justice of his case, and the writ ought as of right to issue. It is no part of the functions of the writ of *mandamus* to determine contested elections, or settle the ultimate title to a public office when disputed. As we have seen, the remedy provided therefor is a statutory contest or the writ of *quo warranto*.

It is clear, therefore, that the methods provided for the trial of such matters are not speedy or adequate, if the laws of this state invest one with a legal *prima facie* title to public office, complete in everything but possession, and that legal *prima facie* title may be tried and determined in a certain proceeding to the exclusion of those matters that are properly involved when, and only when, the ultimate or complete title is disputed and is to be determined by other methods.

If the law provides for a canvass and a certificate of election as evidence of title to an office, it is a clear principle of law deducible from all the authorities I have read that such constitutes a *prima facie* title; that it is necessary that there should be some expeditious remedy for or method of putting every office in the possession of the person who is *prima facie* entitled to it, without waiting for the determination of the ultimate right to such office. The remedy by *mandamus* is such a method, and has been used for this purpose from the earliest times. High on Extraordinary Legal Remedies, 3d ed., § 67; Blackstone's Commentaries, 110; *Street* v. *Gallatin County Commrs.*, 1 Breese (Ill.), 50; *Dew* v. *Judges*, 3 Hen. & M. (13 Va.) 1, 3 Am. Dec. 639; *Ex parte Diggs*, 52 Ala. 381; *Ex parte Wiley*, 54 Ala. 226; *Singleton* v. *Commissioners*, 2 Bay (S. C.), 105; *People* v. *Board of Police*, 35 Barb. (N. Y.) 535; *Banton* v. *Wilson*, 4 Tex. 400; *Lindsey* v. *Luckett*, 20 Tex. 516; *Felts* v. *Mayor of Memphis*, 2 Head (Tenn.), 650; *Harwood* v. *Marshall*, 9 Md. 83; *Strong's Case*, 20 Pick. (Mass.), 484; *State ex rel. Curtis* v. *McCullough*, 3 Nev. 202; *People* v. *Hallett*, 1 Colo. 352; *State* v. *Common Council of Watertown*, 9 Wis. 254. It is unnecessary to quote the more modern authorities, because this principle of law is not disputed, nor well could it be under the statute quoted; the defendant's contention being that there is no law in this jurisdiction upon which such a *prima facie* title may be founded as will justify the issuance of the writ of *mandamus*.

XVIII Ariz.—29

If this be true, the contention is sound. The position taken by defendant has a basis for good faith and reasonableness in an expression by this court in the case of *State* v. *Osborne,* 14 Ariz. 185, 125 Pac. 884, unfortunate in the respect that it is somewhat ambiguous and its language might lend some color of reasonableness to the interpretation given to it by defendant's counsel.

Section 11, article 5, of the Constitution, provides:

"The returns of the election for all state officers shall be canvassed, and certificates of election issued by the secretary of state, in such manner as may be provided by law."

An interpretation of this clause of the Constitution was not called for in that case, and a close analysis of it was not made or attempted but the court, *ex gratia,* and by way of argument merely, used this language:

"The duty of canvassing the returns of the election for all state officers devolves upon the Secretary of State, and no other officer can perform such duties. . . . This section of the Constitution is, however, not self-executing. It requires that the Secretary of State shall perform such duties in such manner as may be provided by law. Clearly it was the duty of the legislature to provide the manner in which the secretary should canvass the votes."

The only thought in the mind of the court was to give accent to the required action of the legislature in providing a definite mode of procedure to guide the secretary and enable him the more expeditiously and within definite lines to perform his constitutional duty, rather than leave it to his own devices to fulfill the requirement. It is perfectly clear, upon reflection, that the duty of canvassing the returns cannot be taken from the secretary, and, that being true, it demonstrates that the only officer with power to declare the result of the canvass is the secretary who makes the canvass, for the performance of the duty must inevitably end in the result of the canvass. It follows, therefore, that the specific duty cast upon the secretary to canvass the returns of the election for all state offices and issue certificates of election cannot be defeated by the legislature, and in this sense the provision is clearly self-executing; but nevertheless it is an instance wherein supplementary legislation is highly desirable, if not absolutely necessary, to prescribe the particular details attendant upon and

the mode of procedure to be followed in making the canvass and declaring the result thereof. The duty to canvass clearly implies the duty to declare the result thereof, for it would be the most idle thing to make a canvass of the returns, if no result would be accomplished thereby; also the duty of issuing a certificate of election on the result of the canvass is a duty of the secretary which cannot be defeated by the legislature, and in the absence of specific regulations the duty to issue would clearly imply the duty to execute the certificate. The duty to issue a certificate, however, does not necessarily include the power to execute the certificate. As a noun, in the ordinary sense, it means the act of sending or causing to go forth; in short, delivery. Subsequent legislation might provide for the form and contents of the certificate and the manner of its execution, as, for instance, whether under the hand of the secretary alone, or under the hand of the Governor, countersigned by the secretary, with the seal of the state affixed. To my mind it is clear that the provision in question was intended as a present enactment, complete in itself as definitive legislation so far as the duty to canvass the returns, declare the result thereof, and issue the certificate of election based thereon, and in this respect self-executing. But it does contemplate subsequent legislation to furnish a mode of procedure to guide the secretary in the particulars or methods of the canvass, declaration of the result, and the execution and issuance of the certificate of election, and not leave too much concerning such matters to his discretion and to his own devices.

If a constitutional provision directly imposes a duty upon an officer, no legislation is necessary to require the performance of such duty. From the bench, when another phase of the matter was before the court on appeal from a judgment or order of the superior court dismissing the contest proceedings, because no declaration of the result had been made or certificate of election issued, and the Secretary of State was threatening to issue to plaintiff a certificate of election, it was intimated, with no occasion to decide the matter, that it was perhaps not within our power to prohibit the secretary from so doing, and, on the other hand, if he refused to execute the certificate, it was perhaps beyond our power to compel that officer to do so. If there is a duty to canvass the

returns, it is an indispensable adjunct to the process to have a declaration of the result thereof; and it matters not how this may be made, or whether left to the devices of the secretary, or the manner of his doing it regulated by the legislature, if the thing was done, it would be only a question of competent and satisfactory evidence to prove the doing of it. Obviously no one but the Secretary of State can canvass the returns and declare the result as affecting all elected state officers, and if we yielded to the argument of defendant's counsel, the pending statutory contest in the superior court could not be maintained, in the absence of an official declaration of the result of the election, and the conflicting claims to the office would then be relegated to *quo warranto*.

There is no question in this proceeding of the genuineness of the returns canvassed by the secretary; that is, that the papers presented to him are forged or spurious, that they are not the returns, and all the returns, and signed by the proper officers. His simple function, then, was to add them up, ascertain and declare the apparent result of the voting, and in no wise is the good faith of the secretary in the premises sought to be impeached in the doing of all this. It must follow that all other questions must be tried before the court or other tribunal for contesting elections or in *quo warranto* proceedings. The members of the court seem to be in harmony upon the proposition that the acts of the Secretary of State, under the constitutional provision, in canvassing the returns, declaring the result thereof, and delivering to plaintiff a certificate of his election gives plaintiff a *prima facie* right to be admitted temporarily to the office until reversed or set aside by a court of proper jurisdiction in appropriate proceedings, provided only that plaintiff is not shown to be disqualified under the law from holding the office of Governor. There is some discord in the books as to whether or not in *mandamus* proceedings the disqualification of the officer holding the certificate of election may be urged to defeat his temporary admission to the office; in fine, whether his alleged disqualification may properly be put in issue in such a proceeding to overcome his *prima facie* title evidenced by the canvass and certificate. In my view, if the applicant under the uncontroverted facts was clearly ineligible to be elected to or dis-

qualified from holding the office, I would not hesitate to refuse the writ. The court ought not to do a useless thing.

But, however this may be, it is plain to my mind that no such ineligibility or disqualification exists in plaintiff. The qualifications for Governor are specifically detailed in the Constitution, and the legislature is therefore powerless to add to or detract from the qualifications prescribed. No citation of authority is necessary here. There is no provision in the Constitution making a member of the tax commission or the holder of any other state office ineligible to be elected to or hold the office of Governor, except it be a judge of the supreme court or a judge of the superior court. It is not contended that plaintiff is ineligible under the Constitution, or that he does not possess the qualifications therein prescribed; but his disqualification is said to be found in paragraph 4822, Revised Statutes of 1913, as follows:

"No member shall hold any office under the government of the United States, or of any other state. Each of said members of the said commission shall devote his entire time to the duties of the office and shall not hold any other position of trust or profit, engage in any other occupation or business interfering with, or inconsistent with his duties, or serve on or under any committee of any political party."

Members of the tax commission are not constitutional officers. The state tax commission is a creature of the legislature. It may prescribe what qualifications its members shall possess, when vacancies shall occur—in short, the legislature is all-powerful over it, even to the abolition of the commission. But the legislature cannot say who shall be ineligible to be elected to the office of Governor, or who shall be disqualified from holding that office, and it has not even pretended to do so in the statute quoted. Obviously the effect of the statute is not to prohibit a tax commissioner from holding any other position of trust or profit during his term of office, but the effect of the provision is that if a member of the tax commission does so, he by that very act vacates his office as tax commissioner—creates a vacancy in the tax commission. At common law, if a person while occupying one office accepts another incompatible with the first, he *ipso facto* vacates the first office, and his title thereto is thereby terminated, without any other act or proceeding. If necessary, *mandamus* would

issue to install his legally appointed or elected successor. Public policy is clearly announced in this statute to the effect that a member of the tax commission is arbitrarily prohibited from holding two offices of trust or profit or the like at the same time, whether or not the two offices would be deemed incompatible. Upon receiving the certificate of election and taking and filing the oath of office prescribed by law, the plaintiff unqualifiedly accepted the office he is now contending for and *ipso facto* he vacated the office of tax commissioner. It is well settled by an overwhelming array of authority that the holding of one office does not render the incumbent ineligible to another, but that the acceptance of the second office, when prohibited, *ipso facto* absolutely vacates the first office. The following authorities may be consulted: McCrary on Elections, 3d ed., § 304, p. 206; *State* v. *Thompson,* 122 N. C. 493, 29 S. E. 720; *State ex rel. Walker* v. *Bus,* 135 Mo. 325, 33 L. R. A. 616, 36 S. W. 636; *Shell* v. *Cousins,* 77 Va. 328; *Attorney General* v. *Oakman,* 126 Mich. 717, 86 N. W. 151, reported in 86 Am. St. Rep. 574, with extended notes on the loss of one office by accepting another.

It is urged, however, that under paragraph 221, Revised Statutes of 1913, an office does not become vacant by resignation until the lawful acceptance thereof, and to hold that the first office becomes vacant by the acceptance of the second is permitting an officer to do indirectly what he may not do directly; that is, vacate an office without the consent of the appointing power. A little thought will at once demonstrate the position to be unsound. It was a rule of the common law that an officer cannot avoid his office by accepting another, unless his office be such as he could terminate by his own act simply, or unless that authority concurs in the new appointment, which would accept the surrender of, or removal from, the old one. See *Rex* v. *Patterson,* 4 Barn, & Ad. 9, 24 E. C. L. 15. But we observe here that the very authority, to wit, the legislature, which prescribed in paragraph 221 that no vacancy in office should occur by resignation until the lawful acceptance thereof, also prescribed in section 4822 that a member of the tax commission who accepts any other office of trust or profit or the like *ipso facto* vacates the first office. The law-making power has spoken in general terms as to a vacancy in one instance, and

particularly as to the existence of a vacancy in another instance. It is self-evident that, if the provisions of paragraphs 220 and 221, Revised Statutes of 1913, are exclusive, and not to be construed *in pari materia* with paragraph 4822, the latter is of no effect whatever, and the very mischief which the public policy of the state aimed to cut out by the roots, by the inhibition against a member of the tax commission holding two offices at the same time, is permitted. There is no ground for any such holding.

The other matters going to the belief of the defendant that he received the highest number of legal votes cast at the election, and is therefore the lawful Governor of the state, cannot, under the law, in this proceeding be permitted to overcome the showing on the part of plaintiff that he has been declared by the proper canvassing officer to be elected to the office, that he has received the proper certificate of election, and has duly qualified. If it could be established here that the defendant was in fact elected Governor, *mandamus,* of course, would not issue; but the insurmountable difficulty is that such fact cannot be determined here, but must be adjudicated in another proceeding and before another forum. The canvass and certificate of the Secretary of State are no evidence of who was in truth elected; but they are *prima facie* evidence of the result, and they constitute the highest evidence of the *prima facie* title that the law requires. In this proceeding we are precluded from determining who was in fact elected to the office of Governor. Such controversy cannot here be put in issue. We are limited strictly to the issues involving the *prima facie* right or title only, and herein is comprehended the necessity for the prompt and efficient remedy of *mandamus.* I fail to find the proposition anywhere denied in the books that *mandamus* ought to issue to compel the delivery of official belongings of a public office to a successor holding the *prima facie* title emanating from the authority constituted by law to convey it, and this applies to one holding over in an office in a contest between himself and a person who had been declared elected to that identical office as his successor. That the right of plaintiff to the writ under such circumstances is clear may be seen from the following authorities: *Supervisors of Town of La Pointe* v. *O'Malley,* 46 Wis. 35, 50 N. W. 521; *Jones* v.

*Oates,* 86 Wis. 634, 39 Am. St Rep. 912, 57 N. W. 296;
*Cameron* v. *Parker,* 2 Okl. 277, 38 Pac. 14; *State* v. *Callahan,*
4 N. D. 481, 61 N. W. 1025; *Matney* v. *King,* 20 Okl. 22, 93
Pac. 737; *Huffman* v. *Mills,* 39 Kan. 577, 18 Pac. 516; 9
R. C. L., ''Elections,'' § 116; 13 Modern American Law,
p. 289; 6 Am. & Eng. Ency. of Law, 1st ed., ''Elections,''
p. 373; Constantineau on the De Facto Doctrine, § 443; High
on Extraordinary Legal Remedies, 3d ed., §§ 73, 74. The
very able counsel for defendant have directed our attention
to no authority holding the contrary.

The defendant's definite term of two years under the
Constitution having expired, the further term contingent
upon the election and qualification of his successor is, under
the law, inferior and subordinate to the right of the plaintiff,
founded upon the official canvass and delivery of the certi-
ficate of election by the Secretary of State. The plaintiff
has, therefore, a present right to the official belongings of
the office, to which the present status of the defendant must
yield, at least temporarily, until the ultimate title to the
office may be determined. The clear authority of the law
so demands. If successful in the contest, the defendant loses
no right by doing this, not even the salary and emoluments
of the office while out of possession, for, under the law, one
holding by virtue of the *prima facie* title only, where it is
contested, is, under the circumstances, a makeshift merely—
*locum tenens*—temporarily filling an office which may belong
to another. In a word, the plaintiff has the status only of
a *de facto* officer, in contradistinction to an officer *de jure,*
who is the legitimate officer by right and just title, but whose
right is held in abeyance by command of the law, upon prin-
ciples of public policy, until it may be vindicated by the
proper constitutional authority. An author gives the gen-
eral characteristics of an officer *de facto* as follows:

''Notwithstanding the above definitions, it may not be
amiss to give a general description of an officer *de facto,* and
exhibit what his status is in the English and American juris-
prudence. In *Rex* v. *Lisle* [Andrews, 166], it is said that he
'is a notional creature only, erected by the law, in order to
answer the ends of justice and equity under particular cir-
cumstances.' Hence he is a legal being, and although, as
pointed out in *State* v. *Carroll* [38 Conn. 449, 9 Am. Rep.

409], it is the quality and character of his acts, which induce law to afford them validity, and not because of any quality of character conferred upon the officer, or attached to him by reason of any defective election or appointment, yet it must be admitted that the law, in order to attain the end desired, is compelled to recognize in him a qualified official status. He is, therefore, *ex necessitate* a creature known to the law, possessing an individuality of his own, distinct from and independent of that of an officer *de jure.* He is invested with certain rights, powers, and duties, is under certain responsibilities to the public and third persons, and even his authority is protected by law to a certain degree. His official power is not the outcome of any relation between him and the rightful officer, as that between principal and agent, or officer and deputy, but is derived from the office itself. With respect to innocent persons dealing with him, he is a lawful officer, so far as the validity of his official acts is concerned. While he may be accountable to the *de jure* officer for the fees and emoluments which he is illegally in receipt of, and to the public for unlawfully holding a public office, yet, so long as his title has not been adversely determined in a direct proceeding brought for the purpose, his assumed official character cannot be collaterally assailed, unless he attempts to gain a personal advantage from his incumbency, or to justify as an officer in civil actions brought against him. To sum up, it may be said that he is a good officer so far as the interests of the public and third persons require him to be so, and to that extent he is recognized by law, but no further, and therefore he is not a good officer as to himself." Constantineau on the De Facto Doctrine, § 23.

Such a status is full of responsibility, and pregnant with much liability unless most discreetly exercised. Considerations of this character would seem to invite on the part of plaintiff and defendant every reasonable effort to expedite the ultimate determination as to who is the real Governor of Arizona. And beyond this is perhaps the greater responsibility to the public of a nonpartisan trial court, in which the real contest is pending, to grasp this in hand, discover the essential points in dispute, and quicken the solution of this most important question, affecting the purity

of elections and the legally expressed will of the voters—
I say to do this with such dispatch as will deprive neither
party of a fair opportunity to be heard on essential particu-
lars and compatible with a fair and impartial understanding
as to which of the contending parties has received the high-
est number of legal votes for the office, and thereby, what-
ever the result may be, fearlessly to determine who is the
*de jure* as well as the *de facto* Governor of Arizona. In
the performance of this delicate duty I feel persuaded of the
capacity of the learned judge of the trial court to further
merit that public confidence to which he has already so
largely attained.

Finally, I am of opinion that plaintiff is entitled to the
writ prayed, but that it is unnecessary to issue it instantly.
I am convinced that, upon being made acquainted with his
duty under the law as uttered by this court, the defendant
will gracefully yield a temporary possession, to depend upon
a judicial determination of the ultimate right. This is but
that deference and respect due from the supreme power in
one department of the government, and which this court has
and will show, to the highest authority in another and co-
ordinate branch thereof. The distinguished citizen, in high
station, now in possession of the office belongings, in good
faith is convinced of his duty under the Constitution and
laws to retain the possession of the place, subject to the ju-
dicial remedies; and this is not an improper temper, under
the circumstances, to the end that he may lose no rights by
voluntary surrender on the ground of estoppel or otherwise.
If, upon judgment, the defendant is successful in the con-
test, the power of the law will promptly reinstate him; if
not, that same power will recognize the plaintiff, if success-
ful, as the lawful officer, and submerge his *de facto* char-
acter which now attaches into that of the *de jure* Governor
having the ultimate lawful right and just title to the office.

If it should become necessary, however, a showing may be
made to that effect, and the writ prayed will then issue as a
matter of course.

ROSS, J.—I concur in the opinion of the Chief Justice.

CUNNINGHAM, J. (Dissenting).—The purpose and un-
questioned object of this proceeding is to remove the defend-

ant from the actual possession of the office of Governor, and thereby deprive him of the facilities with which to exercise the functions of the office—to depose defendant as the *de facto* Governor, and install the plaintiff into such office as such *de facto* officer pending the final determination of the contest instituted by the defendant against the plaintiff on December 6, 1916. The real matter for determination in this proceeding is the temporary possession of the office, and the right to exercise the functions of the office until the legal title thereto is determined in another proceeding now pending.

The first question with which this court is concerned is: To what extent courts may properly interfere by *mandamus* with questions relating to the possession of public offices. Eminent text-writers have agreed as to the general rule which courts have followed in such cases. Thus Mr. High in the second edition of his valuable work (Extraordinary Legal Remedies, § 49, p. 54), says:

"In determining the extent to which courts may properly interfere by *mandamus* with questions relating to the title to and possession of public offices, it is necessary to recur to an important principle, . . . and which may be properly termed the controlling principle, governing the entire jurisdiction by *mandamus*. It is that, in all cases where other adequate and specific remedy exists at law for the grievance complained of, the writ of *mandamus* is never granted. Applying this principle to cases where relief has been sought to determine disputed questions of title to and possession of public offices, the courts have almost uniformly refused to lend their aid by *mandamus,* since the remedy by information in the nature of a *quo warranto* is justly regarded as the most appropriate and efficacious remedy for testing the title to an office, as well as the right to the possession and exercise of the franchise. And the rule may now be regarded as established by an overwhelming current of authority that where an office is already filled by an actual incumbent, exercising the functions of the office *de facto* and under color of right, *mandamus* will not lie to compel the admission of another claimant, or to determine the disputed question of title. In all such cases, the party aggrieved, who seeks an adjudication upon his alleged title and right of possession to

the office, will be left to assert his rights by the aid of an information in the nature of *quo warranto,* which is the only efficacious and specific remedy to determine the questions in dispute [citing cases in note 1, page 55]. And whenever it is apparent on the face of the pleadings, that the issue presented involves a determination as to the person properly elected to an office or entitled to exercise its functions the writ of *mandamus* will be withheld. . . .

"Section 50. Aside from the existence of another adequate remedy by proceedings in *quo warranto* to test the title of an incumbent to his office, it is a sufficient objection to relief by *mandamus* in such a case that the granting of the writ would have the effect of admitting a second person to an office already filled by another, both claiming to be duly entitled thereto, and resort must still be had to further proceedings to test the disputed title."

In McCrary on Elections, fourth edition, page 297, section 402, that eminent author says:

"It is well settled, as a general rule, that the writ of *mandamus* will not be granted in any case where another adequate and specific remedy is provided, and it follows that the cases are rare in which the courts will interfere by *mandamus* with questions touching the title to and possession of a public office. The courts have almost uniformly refused to grant the writ of *mandamus* in cases of this kind, upon the ground that an information in the nature of a *quo warranto* is the appropriate remedy for testing the title to an office, as well as for determining the right to the possession thereof. Where a party is in possession of an office as its actual incumbent, exercising its functions *de facto* and under color of right, *mandamus* will not lie to compel him to vacate and give place to another. In all such cases the party aggrieved will be left to his common-law remedy by *quo warranto,* or to such other remedy of like nature as may be specifically provided by statute. . . . A few cases may be found which seem to hold a contrary doctrine. But it is safe to say that the rule as above stated is sustained by the overwhelming weight of authority."

The issues as framed in this action certainly involve the trial of the right to the possession of the office, and the determination of one important question necessarily involved

in the statutory action of *quo warranto*. In the statutory
action mentioned the court is required to determine the right
to possession of the office, because paragraph 1602, chapter
8, requires that:

"When a defendant against whom such action has been
brought is adjudged guilty of usurping or intruding into
or unlawfully holding any office, franchise or privilege, judg-
ment shall be rendered that such defendant shall be excluded
from the office, franchise or privilege, and that he pay the
costs of the action. . . . "

And as courts have the inherent power to use all sufficient
process to make their orders and judgments effective, *quo
warranto* furnishes an adequate remedy for, not only the
trial of the legal title to an office, but also a complete remedy
for the removal of one in possession of the same, and the in-
stallation of the party adjudged entitled to such possession.
I can find no peculiar circumstances surrounding this case
which would tend to exclude it from the general rule, above
mentioned, and place it within any exception, and none has
been pointed out in the oral argument or in the briefs. On
the other hand, I do find circumstances which have impelling
persuasive force for holding this case within the general
rule.

The fact that a statutory contest of the election was com-
menced on the sixth day of December, 1916, immediately
after the Secretary of State announced the results of his
canvass of the returns of the election; that such proceeding
had progressed to an advanced stage of joining issue and
preparation for final trial before the plaintiff could or did
in fact commence this action; and we are justified in pre-
suming that such proceeding will be prosecuted with due
diligence to a final conclusion, and when concluded will defi-
nitely settle all of the questions thus raised, as well as the
questions here raised, and full and complete relief, final in
its nature, can be given this plaintiff. Thereby he is not
required to resort to *quo warranto,* and the delay incident
thereto, by a dismissal of his application for a writ of *man-
damus* by this court in order to obtain the full measure of
relief to which he may be entitled in law.

Another circumstance worthy of consideration in connec-
tion with the necessity of granting the writ in this case is

the alleged fact, appearing in the defendant's return, that the plaintiff is the duly elected, qualified, and acting state tax commissioner of the state. The plaintiff does not deny the existence of this fact, but demurs to the allegation and moves to strike because of its immateriality, thereby admitting the existence of the fact. Paragraph 4822, Civil Code of Arizona of 1913, is as follows:

"No member [of the state tax commission] shall hold any office under the government of the United States, or of any other state. Each of said members of the said commission shall devote his entire time to the duties of the office and shall not hold any other position of trust or profit, engage in any other occupation or business interfering with, or inconsistent with his duties, or serve on or under any committee of any political party."

The plaintiff contends that his election to the office of Governor operates in law as a removal from the office of state tax commissioner. I am clearly of the opinion that such is the legal effect of holding another office, the duties of which conflict with the duties of the office already held by the party. But plaintiff's election to the office is questioned, he is not in possession of the office, and is not holding the office of Governor, but is holding the office of state tax commissioner. Consequently plaintiff is not violating the letter of paragraph 4822 by seeking the possession of the office of Governor while he remains *de facto* state tax commissioner, and if the tribunal now trying the contest case determines therein that plaintiff has received the highest number of legal votes for the office of Governor and consequently declares he has been duly elected to that office, such determination has the legal effect of causing the office of state tax commissioner to become vacant upon the date of the going into effect of such judgment, and delivery to him of the possession of the office thereunder, for the reason he ceased to be the tax commissioner when he became entitled to hold the inconsistent office of Governor and actually begins to hold that office.

I can conceive of few, if any, possible injuries to the public from such contingency. The mere election of a party who already holds an office does not have the effect of removing him from the office already held by him, but assuming the duties

of another office to which he is elected has that legal effect. On the undisputed facts in this case, the office of state tax commissioner filled by the plaintiff did not become vacant by operation of law on January 1, 1917, conceding that plaintiff was elected to the office of Governor and entitled to its possession on that date. Legal title and actual possession, and actual exercise of the functions of the office, are necessary to effect the removal from and cause the vacancy in the prior held office, by operation of law. Under, the facts in this case the plaintiff remains the state tax commissioner *de jure*. He will continue in such office, so far as this case is concerned, until he legally acquires the possession of the Governor's office as the legally elected Governor of the state, or until his term of state tax commissioner otherwise terminates.

If plaintiff is put into the temporary possession of the office of Governor by this court's extraordinary writ of *mandamus*, such possession, so acquired, would not necessarily remove him from the office of state tax commissioner. Such order would have that effect, if it should thereafter be authoritatively determined that he is the legally elected Governor, but not otherwise. In case this court removes the defendant from the office, and gives the plaintiff such possession, and thereafter the proper tribunal determines the contest in favor of the plaintiff, then, in such case, no injury would result to anyone. On the other hand, if such tribunal determines the contest in favor of the defendant, a very different matter would be presented. The plaintiff would have remained the *de jure* state tax commissioner while he was exercising the duties of Governor *de facto*—while he was holding another position of trust *de jure* in plain violation of the inhibitions of paragraph 4822, *supra*.

Where do the necessities of the case require the removal of one person from the office of Governor, and the installing of another in such office, so long as a doubt exists of the justice of such removal and installation? Do the necessities of the case require that the plaintiff, and not the defendant, exercise the duties of the Governor's office, even though hereafter it may transpire that defendant, and not plaintiff, was and is entitled to the office of Governor, and that the plaintiff remained the state tax commissioner while he exercised the duties *de facto* of Governor?

No injustice would result to the public if the defendant continues to exercise the functions of the office until the title to the office is settled, and no apparent injustice would result to the plaintiff from the defendant's holding the office of Governor, so long as the plaintiff continues to hold the office of state tax commissioner, because he is not permitted in law to hold any other position of trust or profit while he holds the office of state tax commissioner. On the other hand, if this court deposes the defendant, and installs the plaintiff in the office of Governor, and later the constituted authority should determine that defendant, and not plaintiff, is the legally elected Governor, and gives the defendant possession of the office, then in the meantime the plaintiff has held two offices, that of Governor *de facto,* and that of state tax commissioner *de jure,* and thereby has been enabled to violate the inhibition of a plain statute. The public interests in such event are seriously injured, and injured directly by reason of an order of this court. Here is a very substantial doubt of the necessity or propriety of issuing the writ.

The undoubted rule is that the exercise of the jurisdiction in *mandamus* rests, to a considerable extent, in the sound judicial discretion of the court, and cases do arise in which, although the applicant for relief has an undoubted legal right, for which *mandamus* is the appropriate remedy, the court may, in the exercise of a wise discretion, still refuse the relief. High on Extraordinary Legal Remedies, § 9; *Spring Valley Waterworks* v. *San Francisco,* 52 Cal. 111, 117; *Spring Valley Waterworks* v. *Bryant,* 52 Cal. 132, 140; *Wiedwald* v. *Dodson,* 95 Cal. 450, 30 Pac. 580; *People* v. *Board of Suprs.,* 185 Ill. 288, 56 N. E. 1044; *People* v. *Rock Island,* 215 Ill. 488, 106 Am. St. Rep. 179, 74 N. E. 437; *People* v. *Rose,* 211 Ill. 252, 71 N. E. 1124; *People* v. *Board of Trade,* 193 Ill. 577, 62 N. E. 196; *Board of Excise of Oklahoma County* v. *Board of Directors of School Dist.,* 31 Okl. 553, Ann. Cas. 1913E, 369, 122 Pac. 520; *State* v. *Enloe,* 121 Tenn. 347, 117 S. W. 223; *Jacobsen* v. *Chicago,* 191 Ill. App. 511; *State* v. *Bank of Conception,* 174 Mo. App. 589, 594, 163 S. W. 945; 26 Cyc. 145; 14 Am. & Eng. Ency. of Law, 97. "The writ of *mandamus* issues only in case of necessity, to prevent injustice or great injury. If there is a doubt

of its necessity or propriety, it will not go." 26 Cyc. 146, and supported by cases cited in note 46.

From the facts before the court, the court is unable to determine whether greater injustice will result from issuing the writ than from refusing the writ. This seems evident to me. Therefore I am of the opinion that the necessities of the case do not require the issuance of the writ to prevent injustice or great injury, and that plaintiff is furnished an adequate remedy at law by the contest proceeding for a full measure of the relief to which he is entitled. He is not required to, but may resort to still another adequate remedy given him in *quo warranto*.

I oppose the issuance of the peremptory writ on the facts presented in this case.

On general doctrine governing *mandamus* to compel surrender of office, see note in 31 L. R. A. 342.

On *mandamus* to compel one usurping office to turn over papers, see note in 35 L. R. A. (N. S.) 528.

On right to attack *prima facie* title of relator in *mandamus* to obtain office, see note in L. R. A. 1915A, 832.