## JOHN F. MONAHAN, PROSECUTOR, v. JOHN A. MATTHEWS, RESPONDENT.

Argued December 22, 1917—Decided February 15, 1918.

The proceedings for a recount of votes, authorized by section 159 of of the election laws, is applicable to a contest of an election for city commissioners held in a city in accordance with the provisions of the act of 1911 (*Pamph. L., p.* 462), commonly known as the "Walsh act."

---

On *certiorari.*

Before Justice KALISCH, sitting alone in the Supreme Court, by statute.

For the prosecutor, *James R. Nugent.*

For the respondent, *Samuel I. Kessler.*

The opinion of the court was delivered by

KALISCH, J. The prosecutor, by this proceeding, attacks the legal propriety of the action of a justice of the Supreme

Court in granting a recount, by virtue of the provisions of section 159 of the Election laws, to the defendant, who was a candidate for election under the act, known as the "Walsh act."

The contention of the prosecutor is that the aforementioned section is not applicable to a candidate for election under the Walsh act, and that, therefore, the order for a recount should be set aside.

In 1917, the city of Newark adopted a commission form of government under the Walsh act. On the 13th day of November, 1917, a special election was held for the election of five commissioners, provided for by the act, and at which election, the defendant was a candidate, among seventy-nine other candidates, for the office of commissioner.

The petition for the recount, among other things, sets out the following: "That on the face of the returns made to and by the city clerk, in and for said city of Newark aforesaid, your petitioner was defeated by a plurality of eighty votes by one John F. Monahan, who was the fifth in choice for the said office of city commissioners.

"Petitioner further shows that at the said special election there were to be elected five city commissioners for the said city of Newark aforesaid.

"Petitioner further shows, and he has reason to believe, that errors have been made by the board of registry and elections in and for the said several election districts of the city of Newark aforesaid, and in their returns to the said board of elections in receiving and rejecting votes aforesaid, to an extent sufficient to change the result of said special election, whereby the result of said special election has been changed."

From the record it appears that the application for the recount was made on the 15th day of November, 1917, and on that day Chief Justice Gummere made the order for the recount.

Subsequently, upon the application of the prosecutor, the Chief Justice allowed a writ of *certiorari* to review the legality of the order made.

The proceeding was speeded by counsel for defendant, under a statute permitting it, so that the important public question involved may be heard and determined, without delay, by a justice of the Supreme Court, sitting alone, and in order that such decision as he might give may get an early review by the Court of Errors and Appeals.

Although counsel for prosecutor assigns five reasons why the order for the recount should be set aside, the only ground relied on and argued is that the one hundred and fifty-ninth section of the Election act is not applicable to an election held under the provision of the act entitled "An act relating to, regulating and providing for the government of cities, towns, boroughs and other municipalities within this state," passed and approved April 25th, 1911, and the supplement thereto and amendments thereof.

Counsel for prosecutor argues, in support of the reason advanced, that section 159 is a provision of an act entitled "An act to regulate elections," approved April 4th, 1898, whereas the election in which the prosecutor and defendant were candidates was held under an act which forms a part of the General Election act, and applies only to a distinctive form of government, as is evinced by its title, above stated, providing its own election machinery and declaring how the commissioners provided for in the act shall be nominated and elected. *Pamph. L.* 1911, *p.* 462; *Pamph. L.* 1914, *p.* 170, and *Pamph. L.* 1916, *p.* 216. That the act of 1911, termed the "Walsh act," and its supplements and amendments differ from the General Election act in many essential features—*e. g.,* all party distinctions which are recognized by the General Election laws are expressly done away with by the Walsh act. The Walsh act provides a special primary procedure, preferential ballots, a determination of the vote by the city clerk, none of which methods of procedure is to be found in the General Election laws. And, finally, it is urged that section 1 of the act of 1916, page 217, which provides that the election shall be held by the general election-officers "at the same place and conducted in the same manner, so far as possible, and the polls

shall' be opened and closed at the same hours as provided by the General Election laws," is limited to the operation of the General Election laws to the extent indicated—that is to say, that the only provisions of the Election laws applicable to an election held under the "Walsh act" are those which relate to the opening and closing of the polls, the places where and by whom such elections shall be held and the manner in which the election shall be conducted.

It is quite obvious that the "Walsh act" inaugurated in our midst a form of government which was unknown to the common law, and provided a machinery, equipped with a method of election and procedure, for the establishment of such form of government which was not only unknown to the common law, but is substantially inoperative in any election conducted under the General Election laws of this state.

It will not, therefore, be an unwarranted assumption to take it for granted that at the time of the enactment of section 159 of the Election act, and at the various successive periods when that section was broadened in its scope and application, by the law-making power of the state, such a form of government and machinery of election, for its establishment and of its ruling governmental body, as erected by the Walsh act, were not within the contemplation of the framers of our General Election laws. But that is wholly unimportant. A statute will be given a prospective effect, unless there are words contained therein expressing a contrary intention. *Citizens Gas Light Co.* v. *Alden,* 44 *N. J. L.* 648, 653.

Under the universally accepted rules of statutory construction, the legislature is not required every time it makes a change in the manner of voting or in the counting of votes at elections to expressly declare that section 159 shall apply to the changed conditions.

The fact that the legislature did not foresee or could not have contemplated at the time of the enactment of section 159 such a radical change in the method of election as was brought about by the "Walsh act," is not essential when considered in connection with the prime object of the act.

The prime object of the act was to give to any candidate, at any election, under the conditions prescribed by section 159, the right to have a recount of the votes cast at such election.

The legal effect of this legislative pronouncement was the establishment of a statutory principle or policy to govern all elections to be held in the state.

This statutory principle or policy is imbued with all the force and effect of a legal principle, born of the common law, and like it may be applied to new conditions germane to the principle.

If, therefore, a candidate for the office of commissioner under the "Walsh act" comes fairly within the language of section 159 of the Election laws which provides: "Whenever any candidate at any election shall have reason to believe that an error has been made by a board of elections or of canvassers in counting or declaring the vote of such election * * * whereby the result of such election has been changed, such candidate * * * may within ten days after such election apply to any justice of the Supreme Court who shall be authorized to order and cause, upon such terms as he may deem proper, a recount, &c.," there appears to be no good reason why he should be denied the benefit of it.

The situation presented here is that the defendant was a candidate at an election for the office of commissioner. His petition for a recount is founded upon the allegations that errors were made by the boards of elections in the several election districts of the city of Newark in receiving and rejecting votes and in their returns, and this is sufficient to entitle him to a recount.

It is, however, highly important to mention in this connection that the provisions of the "Walsh act," relating to the election of candidates, by the preferential ballot, the manner of voting and ascertaining the result, create a situation which makes it at least doubtful in my mind whether the statutory aim of section 159 can be made practically applicable to elections held under the Walsh act. I have grave doubt that it can. But, nevertheless, I am constrained to hold that the peti-

tioner is entitled to a recount and that the order for a recount was properly made.

And while on this topic it is fit to observe that section 159 was not primarily designed to lay a ground work for investigation into frauds perpetrated at an election. Incidentally to such investigation fraud may be disclosed. The section clearly states its design. The object expressed is to have votes at an 'election recounted in order to rectify mistakes and errors committed by the boards of elections or board of canvassers in counting the vote or declaring the result. It provides a prompt and efficient means to remedy a wrong, if wrong exists. Prior to this enactment the legislature provided a method by which elections might be contested in the Circuit Court before judge and jury. This right is still open to a candidate for office who desires to contest the election at which he was declared defeated.

The courts are always open to the filing of an information in the nature of a *quo warranto* to test the right of an incumbent to office. It is an effective common law remedy. In its early stages it was hampered with useless formalities, but now under our statute the proceeding has been simplified.

It affords the most ample means for investigation into the conduct of an election in a court of law before a judge and jury.

This digression from the topic in hand was for the purpose of pointing out that a petitioner for a recount is not remediless even though section 159 were held to be inapplicable; and that frauds perpetrated at an election, whether by the voter, election board or board of canvassers, are subject to investigation and can be dealt with most effectively by the courts of law in *quo warranto* proceedings.

Furthermore, it will be assumed that the legislature was fully aware of the legal remedies which existed to promote the purity of the ballot box and to insure to one rightfully elected to office the fruit of such election when section 159 and the amendments thereof were enacted. The end which this later legislation seeks is to carry out the will of the voter, as expressed through the ballot box, by an honest and fair count.

That being the legislative design, the doubt that disturbs me as to its practical operation when applied to elections under the "Walsh act," must give way to the higher consideration of public policy upon which section 159 is founded.

The writ will be dismissed, with costs.