714 P.2d 450

Ambrose **SHEPHERD** and Louis Dennison, a majority of the members of the Board of Supervisors of Apache County; David Silva, Superintendent of Schools of Apache County; Dennis Silva, Mayor of Springerville, Arizona; R.W. Ellis, member of the steering committee for the Apache Community College District; and Maude Chavez, Patrick Graham, Dale Newton, Joe Shirley, Jr., and Albert Yazzie, members of the Apache County Community College District Governing Board, Petitioners-Appellants,

v.

Charles D. **BRUMBACK,** Joe S. Causey, John Cuthbertson, Manuel H. Garcia, Wanda G. Hall, C.L. Harkins, James F. Haythornewhite, Gherald G.L. Hoopes, Don V. McIntyre, Mary Louise Montana, A. Paul Pearce, Ted Pettet, Robert W. Prochnow, William P. Reilly, Ray Ryan, Abbott Sekaquaptewa, Carolyn Warner, Respondents-Appellees.

No. 1 CA–CIV 7574.

Court of Appeals of Arizona, Division 1, Department C.

Nov. 14, 1985.

Review Denied Feb. 12, 1986.

Smitherman & Sacks, P.C. by William C. Smitherman, Tucson, and Kenneth A. Haber, Springerville, for petitioners-appellants.

Robert K. Corbin, Atty. Gen. by Jonathon H. Schwartz, Susan M. Segal, Asst. Attys. Gen., Phoenix, for respondents-appellees.

## OPINION

KLEINSCHMIDT, Judge.

Appellants challenge an order of the superior court denying special action relief to compel the State Board of Directors for Community Colleges to present to the legislature a plan for the formation of a community college district in Apache County. The

appellants are not entitled to the requested relief, and we affirm.

## FACTS

In August 1981, the Apache County School Superintendent transmitted a petition to form a community college district to the State Board of Directors for Community Colleges pursuant to A.R.S. § 15–1403(B). The state board then conducted a survey and determined that the proposed district met the minimum standards of assessed valuation and potential full-time student enrollment required by A.R.S. § 15–1402 (amended 1983) as it then existed. This determination is set forth in a letter from the board to the Apache County Manager dated September 21, 1981. The state board also set up a steering committee to determine the feasibility of establishing a community college district in Apache County, taking into consideration the economic, political, and demographic makeup of the area.

While the feasibility study was underway, the legislature imposed a three-year moratorium on the formation of community college districts. Ariz.Laws 1982, ch. 289. Because the bill passed without an emergency clause, the moratorium did not become effective until July 24, 1982, ninety days after adjournment of the legislature. The bill provided, however, that once effective, the moratorium was retroactive to January 1, 1981.

On June 19, 1982, the state board met and, on the advice of its steering committee, rejected Apache County's petition, citing ongoing disputes over taxation between the Native American community and the residents of the southern portion of the county and the adverse economic impact a new district would have upon the statewide community college system, especially to the struggling community college in neighboring Navajo County.

On July 20, 1982, Apache County, in disregard of the state board's refusal to approve the formation of a district, held an election to determine whether the district should be formed. Although the votes were cast four days before the moratorium on new college districts went into effect, no canvass of the election was held until July 26, 1982, two days after the moritorium became effective. The canvass determined that a majority of the votes cast favored the formation of the district.

The case presents two issues: 1) whether Apache County had legal authority to call the election of July 20, 1982, even though the state board had rejected its petition to form a district, and 2) whether a community college district was formed prior to July 24, 1982, the effective date of the legislative moratorium.

## LEGALITY OF ELECTION

Arizona Revised Statutes § 15–1403(C) permits an election for the formation of a community college district only after the state board has approved the petition to establish a district. We conclude that the petition was, in effect, approved when the state board determined that the potential district met the population and valuation requirements of A.R.S. § 15–1402 and that the state board could not therefore withhold its approval based upon a failure to meet other criteria. Reference to the relevant provisions explains the statutory scheme:

A.R.S. § 15–1403 procedure to form a district:

A. For the purpose of forming a district, not less than ten per cent of the qualified electors in the territory included in the proposed district, or where a district consists of more than one county not less than ten per cent of the qualified electors in each county, shall petition the county school superintendent for the establishment of the district. . . .

B. The county school superintendent who is the custodian of the completed petition shall transmit the petition to the state board which shall conduct a survey of the proposed district *to determine whether the proposed district meets the minimum standards of assessed valua-*

*tion and population as provided* in § 15–1402.

C. If the state board approves the petition, the county, or counties, shall call and conduct an election, as prescribed in this article. If the majority of the votes cast in the proposed district, consisting of one county, favors the formation of the district, such a district is deemed to be formed, as provided in § 15–1404. Where the proposed district consists of more than one county there shall be a majority of the votes cast in each county favoring the formation of the district before the district is deemed to be formed, as provided in § 15–1404. (Emphasis added.)

█ Notwithstanding the plain language of the italicized part of the above statute, appellees contend that the state board's authority to reject a petition even if a proposed district meets the requirements of A.R.S. § 15–1402, derives from another statute, A.R.S. § 15–1425(2), which directs the state board to "[s]et standards for the establishment ... of community colleges." Appellees interpret this section as allowing the state board to disapprove an otherwise valid petition on the basis of political, economic, demographic, or any other factors the state board chooses. We disagree. Arizona Revised Statutes § 15–1425(2) deals with the establishment of colleges, not college districts. A college is an educational institution; a college district is a political entity empowered to raise money and levy taxes in order to establish and maintain a college. The two entities are distinct, and we do not believe that A.R.S. § 15–1425(2) allows the state board to establish standards for both. The legislature has set only two standards for the establishment of a community college district under A.R.S. § 15–1402 and, in A.R.S. § 15–1403(B), gives the state board authority to determine only whether those standards were met. Thus, the state board had no authority to reject the petition once it had determined that the proposed district met the requirements of A.R.S. § 15–1402.

█ Appellees argue that even if the state board had no authority to reject the petition, Apache County should have filed a special action to compel such approval instead of proceeding with an election without approval. This argument is unconvincing. Once the state board determined that the proposed district met the minimum standards of A.R.S. § 15–1402, as reflected in its letter of September 21, 1981, no other action by the state board was necessary. In other words, the petition was "approved" for the purposes of A.R.S. § 15–1403(C) on September 21, 1981, when the state board made the necessary finding of eligibility. At that point, Apache County was free to call an election; it did not need to resort to a special action.

## NECESSITY FOR A CANVASS OF THE ELECTION

Given that Apache County had authority to call an election, we must decide whether the election was effective to create a community college district before the statutory moratorium took effect. The relevant statute reads:

If the majority of the votes cast in the proposed district ... favors the formation of the district, such district is deemed to be formed....

A.R.S. § 15–1403(C). Appellants contend the district was formed on the day of the election, four days before the moratorium took effect. Appellees contend the election was not complete, and therefore no district was formed, until the votes had been canvassed, two days after the moratorium. We agree with appellees.

█ No election is final without a canvass. A canvass "is a part of the election procedure and is necessary to the determination of the result." *Grant v. Ammerman,* 437 S.W.2d 547, 549 (Tex.1969). Appellants claim that because A.R.S. §§ 15–1403 and 15–1404 do not specifically provide for a canvass and certification, such is not necessary before a district is formed.

█ Appellants' argument is flawed. It is not necessary for the legislature to reenact every section of the election laws when-

ever it provides for a specific type of election. *See Monahan v. Matthews,* 91 N.J.L. 123, 103 A. 40 (1918). Provisions for canvassing elections are found in A.R.S. § 16–641, *et seq.* A reading of these statutes supports the conclusion that they apply to all elections authorized by state law, and indeed, appellants concede in their opening brief that Apache County was required to canvass the votes pursuant to the general canvassing provisions of A.R.S. § 16–641, *et seq.*

■ Appellants claim, however, that had the legislature intended a district to be formed only after canvass and certification, it would have so provided, as it did in A.R.S. § 15–493 (Bond Elections); A.R.S. § 15–459 (Consolidation of School Districts); and A.R.S. § 15–444 (Formation of Union High School Districts). We disagree. Each of the statutes appellants cite provides that the canvass be conducted by a different entity (the governing board of a school district in a school bond election, for example) than found under the general canvassing provisions of Title 16 of the statutes. Canvassing and certification are mentioned in the cited statutes only because of the special procedures contained therein. If an election, as in this case, requires no special canvassing procedures, then it must be assumed that the general provisions of A.R.S. § 16–641, *et seq.,* apply. Thus, the legislature's silence on the issue of canvassing and certification in A.R.S. §§ 15–1403 and 15–1404 confirms that it intended the normal procedure to be followed.

Given that a canvass was essential in this election, we need to determine whether the results of an election are effective as of the date the votes are cast or as of the date of canvass and certification. Cases from other jurisdictions support the proposition that an election is of no effect until an official canvass is completed. In *Daugherty v. Town of Mabscott,* 131 W.Va. 500, 48 S.E.2d 342 (1948), the court held that a statute requiring a person elected to municipal office to take the oath of office "within twenty days of his election" meant that the

oath must be taken within twenty days after the canvassing board had fully performed its function. The court held that an election is complete only when the results are certain, and that to say it is complete when the polls close, as appellants contend, is "manifestly impractical." 48 S.E.2d at 344. In *Jory v. Arnette,* 360 So.2d 921 (La.App.1978), the court said, in dicta, that a person unqualified for office on the day the votes are cast who becomes qualified prior to a canvass and promulgation of results is nonetheless qualified to hold office, since an election is not complete until the results are made official. 360 So.2d at 924.

We find no case which holds that an election is effective prior to a formal canvass. Appellant relies on *Campbell v. Hunt,* 18 Ariz. 442, 162 P. 882 (1917), which says, in dicta, that it is not the canvass but the casting of the votes which determines the validity of an election. *Campbell* only addressed the question of which of two candidates for governor was entitled to hold the office on a temporary basis until a pending court action could determine who had in fact received the majority of the lawful votes cast. Our supreme court held that the official canvass of the votes gave the plaintiff, Thomas E. Campbell, prima facie title to the office, but that if it was ultimately determined that Campbell's opponent, George W.P. Hunt, had received the most votes, Hunt would be governor. *Campbell* leaves undisturbed the notion that an election is incomplete and ineffective until canvass and certification.

Appellants cite *Spears v. Davis,* 398 S.W.2d 921 (Tex.1966) and *State v. Washburn,* 19 Conn.Sup. 316, 112 A.2d 897 (1955), which hold that in the absence of contrary legislation, an elected official's term of office begins on the day of election. Neither of these cases, however, indicates whether "day of election" means the day the votes are cast or the day election results become final. In fact, *Spears* goes to great lengths in avoiding this issue, refusing to either accept or reject dicta from a prior Texas case which said "[w]hen the qualified electors have cast their ballots *and their votes have been canvassed,* the

election process is at an end and the term of office for the one receiving the highest number of votes begins." *Kirk v. Gordon*, 376 S.W.2d 560, 562 (Tex.1964) (emphasis supplied).

 We hold, therefore, that an election to form a community college district is complete and a district is formed under A.R.S. § 15–1403, only when the votes cast under A.R.S. § 15–1404 are canvassed and it is officially revealed and entered on the records of the board of supervisors pursuant to A.R.S. § 16–646 that a majority of votes cast favor formation of the district. Consequently, Apache County failed to complete its election in time to avoid the moratorium, thereby making the election ineffective to form a community college district.

In light of our discussion above, it is unnecessary to determine whether the legislative moratorium could be applied retroactively.

Affirmed.

CORCORAN and EUBANK, JJ., concur.