[Civil No. 2742. Filed April 26, 1929.]

[276 Pac. 843.]

R. B. FINDLEY, Appellant, v. S. C. SORENSON, Appellee.

See Elections, 20 **C. J.**, sec. 184, p. 155, n. 72, 73, sec. 190, p. 160, n. 45, sec. 222, p. 180, n. 73, 75, sec. 275, p. 217, n. 52, 53, sec. 336, p. 244, n. 59, p. 245, n. 60, sec. 345, p. 249, n. 56.

Schools and School Districts, 35 **Cyc.**, p. 880, n. 90.

Messrs. Silverthorne & Van Spanckeren and Mr. E. S. Clark, for Appellant.

Messrs. Dougherty & Rodgers, for Appellee.

LOCKWOOD, C. J. — On the thirtieth day of October, 1926, an election for a trustee of the Mesa Union High School District, situated in Maricopa county, was held. Before the election there was filed with the clerk of the board of education of the district a petition nominating one L. J. Barden for said position, in conformity with the provisions of section 3, chapter 72, Session Laws of 1921. No other nominating petition was filed. For some reason a number of the electors of said district voted for S. C. Sorenson, hereinafter called contestee, for such position, and the board of education, upon canvassing the vote, declared him to be elected. Within the time allowed by statute one R. B. Findley filed his com-

plaint in the superior court of Maricopa county contesting the election. Contestee brought the matter before us on an original writ of prohibition, claiming that the superior court was without jurisdiction to try the contest, but we determined in the case of *Sorenson v. Superior Court of Maricopa County,* 31 Ariz. 421, 254 Pac. 230, that it did have jurisdiction, and remanded the case for further proceedings. The matter was heard on its merits, and the trial court rendered judgment in favor of contestee, from which judgment this appeal has been prosecuted.

The case turns on the validity of certain votes cast at the election, and there are four assignments of error which raise the issue of the legality of some 89 of these votes, but all of these assignments will in effect be determined by our decision on one question of law, and the application of that conclusion and the corollaries thereof to the undisputed facts. That question is whether or not the general election laws of the state of Arizona apply to elections of trustees in union high school districts.

The general election laws of Arizona were enacted by the first state legislature as chapter 89, Laws of 1913, Third Special Session, found in the 1913 Civil Code as title 12. This chapter, except as amended by subsequent legislatures, still constitutes the general election law of the state. It is unnecessary for us to quote at length therefrom, but is apparent to anyone who examines it as a whole that on its face it is meant to apply only to elections for state, county and precinct officers, and other matters of political import to the state and the named subdivisions thereof, and not to school elections. This is confirmed by the fact that chapter 78, Laws of 1913, Second Special Session, appearing in the 1913 Code as title 11, which governs the general question of public education, as amended by subsequent legislatures, expressly pro-

vides for a special method of election of trustees and the determination of other questions of interest to the particular school district involved, differing radically from that provided for in the general chapter on elections, and by the universal practice in this state, running back far into territorial days, that school elections have always been conducted in a different manner from general elections, and that the strict rules applying to the latter have never been followed in the former. We are therefore of the opinion that the validity of the votes questioned in this case is to be determined by the specific provisions of the statutes in regard to school elections, and the general principles of the common law, and not by the general election code. With this established, let us consider the principles of law applicable to the present case.

There are two cardinal rules which, in the absence of specific statutory provisions to the contrary, always have governed election contests, not only in Arizona, but elsewhere. The first is that general statutes directing the mode of proceeding by election officers are deemed advisory, so that strict compliance with their provisions is not indispensable to the validity of the proceedings themselves, and that honest mistakes or mere omissions on the part of the election officers, or irregularities in directory matters, even though gross, if not fraudulent, will not void an election, unless they affect the result, or at least render it uncertain. *Stackpole* v. *Hallahan,* 16 Mont. 40, 28 L. R. A. 502, 40 Pac. 80; *Montgomery* v. *Henry,* 144 Ala. 629, 6 Ann. Cas. 965, 1 L. R. A. (N. S.) 656, 39 South. 507; 9 R. C. L. 1093, 1094.

The main object of the duties and restrictions imposed on election officers is to afford to every citizen having a constitutional right to vote an opportunity to exercise that right, to prevent those not so entitled from voting, and to insure the conduct of the

election so that the true number of legal votes and their effect can be ascertained with certainty. If these things are accomplished, then to throw out the vote of an entire precinct, or a considerable portion thereof, because the inspectors failed to comply with the statutory regulations, would be a sacrifice of substance to form. In short, a fair election and an honest return should be considered as paramount in importance to minor requirements which prescribe the formal steps to reach that end. Of course, if the statute expressly provides that a failure to observe certain requirements invalidates the vote, the court can do nothing but enforce the law as it is, but, unless there is such a provision, or unless the error or irregularity goes to the honesty of the election itself, it will be generally disregarded.

The second rule of construction is that in counting the ballots, the determination of the intent of the voter is the question of primary importance. This, of course, is always subject to statutory mandates as to how the voter's intention must be expressed, but, where the statute is silent on this point, the common law is still in full vigor, and the intent of the voter is the controlling factor. *Fitzsimmons* v. *Wilks*, 25 Cal. App. 56, 142 Pac. 892; *Carwile* v. *Jones*, 38 Mont. 590, 101 Pac. 153; *Bromley* v. *Hallock*, 57 Colo. 148, 140 Pac. 186; 20 C. J. 155. This intent must, of course, be gathered from the ballot itself, read in the light of the surrounding circumstances of a public character, and not by extrinsic evidence contradicting the face of the ballot. *Fitzsimmons* v. *Wilks, supra;* *Easterbrooks* v. *Atwood,* 83 Vt. 354, Ann. Cas. 1912A 295, 76 Atl. 109; 20 C. J. 245.

There were admittedly 323 legal votes cast for Barden, and 274 for contestee. Let us then consider the 89 questioned votes in the light of the legal principles just stated. These last may be divided into

four classes. The first comprises the entire vote of Lehi precinct. In that precinct the returns of the election board show that 42 votes were cast for contestee, and 8 for Barden. It also appears that the ballots themselves were destroyed before the contest had reached a point where the court ordered them to be produced. The evidence as to their destruction is such that the court would be justified in holding, as we must believe it did to sustain its judgment, that the transaction involved no attempt at concealment or fraud on the part of the election officers, but was done honestly in the pursuance of what they believed to be their duty. The particular irregularity which it is claimed invalidates all the votes cast in that precinct is that the election officers wrote the name of contestee on the ballots before they were handed out to the voters, that of Barden being already printed thereon. There is no express prohibition in the school election law against such conduct, and while it is not to be commended, principally because it might be construed as undue interest on the part of the election officers in the election of the candidate whose name had been written in by them, yet, unless it appears that such conduct did as a matter of fact illegally affect the result of the election, we think that, under the rule first set forth, the vote of the precinct should not be rejected for that cause alone. The mere writing in of the name of Sorenson by the board in and of itself would not permit the ballot to be legally counted for him. It must in addition be marked in such manner as to indicate the intent of the voter, and if this was so done by the voter himself after the ballot was given him, the conduct of the election board, though irregular, was harmless. In the absence of the ballots themselves or any testimony of whether they were so marked, and if so, by whom, since the burden of proof is on contestant to

show illegality, the court properly took the return made by the election board of the precinct as conclusive. *Hunt* v. *Campbell,* 19 Ariz. 254, 169 Pac. 596. We conclude, therefore, that the trial court, having before it only the return of the election board in Lehi precinct, and being satisfied it did not appear affirmatively that such canvass did not express a correct count of the ballots legally cast, properly refused to reject the vote of the precinct. This vote, added to the unquestioned vote of Barden and Sorenson, gave the former 331 votes and the later 316.

The second group of ballots involved some 23 votes cast in Mesa precinct. The evidence shows that these ballots had the name of contestee written in in the same manner as did the ballots in Lehi precinct, by one of the election officers. In this case, however, the ballots themselves were produced in court and examined. As we have indicated, the mere writing in of the name of contestee by the election board did not invalidate the ballots, if when they were voted they were so marked by the voter as to indicate his intent. These ballots show in each case after the name of contestee a square with a cross therein. This shows unmistakably the intent of the voter to cast his ballot for contestee, and the court properly recognized that intent, and the ballots were so counted, raising the total vote for contestee to 339.

The third group of contested ballots consisted of seven from the Mesa district which did not contain a cross at the right of the name of either candidate, and the fourth group consisted of nine ballots which were marked as ballots for the office of trustee of Mesa district No. 4, and not trustee of the Mesa union high school district. The group of seven ballots contained the name of contestee written and the name of Barden printed thereon, but with no mark opposite either. Had it appeared that the name of con-

testee was written by some person other than the voter, they should have been rejected, for in that case there would have been nothing thereon to show the intent of the latter. If, however, the voter himself wrote in the name of Sorenson, his intent would appear to be clear, and, since there is no evidence that the name of contestee on these ballots was written by any person other than the voter, and since the school election law does not expressly require that a mark be placed after the name of the candidate, the court properly counted these ballots for contestee.

We are of the opinion that the nine ballots which were entitled as being cast for the trustee of Mesa district No. 4 should not have been counted for contestee. On their face they were cast for an entirely different office, and while we might perhaps imagine that the voters had meant them to be considered otherwise, as we have stated, the intent of the voter, as expressed by the ballot, may perhaps be explained, but cannot be contradicted. *Easterbrooks* v. *Atwood, supra.*

It appears, therefore, that there were 331 legal votes cast for Barden, and 346 legal votes cast for contestee, and, such being the case, the trial court properly determined the action in favor of the latter. The judgment is affirmed.

McALISTER and ROSS, JJ., concur.