362 P.2d 122

**Laurence WHITE, Appellant,**

**v.**

**Coy DE ARMAN, Appellee.**

**No. 7282.**

Supreme Court of Arizona.

May 24, 1961.

Rehearing Denied June 13, 1961.

Harry W. Bagnall, Jr., Coolidge, for appellant.

Powers & Rehnquist, by William H. Rehnquist, Phoenix, for appellee.

PER CURIAM.

Appellant and appellee were nominees for the office of Sheriff of Pinal County in the general election held in 1960. The appellant, running under the Democratic Party designation, received 6,290 votes and the appellee, running under the Better Law Enforcement designation, received 6,282 votes. These votes were cast by marking an "X" in the square opposite the name of the candidates, both of whose names were printed on the ballot, or by an "X" in the square designated for straight ticket voting. An additional thirty-two ballots contained "write-in" votes for these two candidates, appellant receiving six and appellee receiving twenty-six. The county supervisors declared appellee the winner. An election contest ensued in which the trial court ruled that these thirty-two bal-

**328**

lots should be counted, and sustained the certification of appellee as the winner of the contest with a vote of 6,308 in his favor as compared to 6,296 for appellant.

The sole question raised by this appeal and the only assignment of error made by appellant is as follows:

"The Court erred in allowing any of the 32 questioned write-in votes to be counted for either party."

■ We have long since established the rule of construction that "in counting the ballots, the determination of the intent of the voter is the question of primary importance." However, this rule "is always subject to statutory mandates as to how the voter's intention must be expressed." Findley v. Sorenson, 35 Ariz. 265, 270, 276 P. 843, 844. The pertinent law is contained in A.R.S. § 16–834 and reads as follows:

"§ 16–834. Instructions for voters and election officers; form; preparation and distribution; posting

"A. The board of supervisors shall prepare *the following instructions* for the guidance of voters and election officers at the election, according to which the election shall be conducted and *which shall govern the voters and election officers*:

"Instructions to Voters and Election Officers.

"1. On entering the polls each voter shall give his name in full, and his place of residence, to the judge having charge of the ballots. The inspector, or one of the judges or clerks shall then ascertain if the name of the voter appears on the precinct register, and, if so, the voter will be given a ballot on the stub of which shall be written the initials of the judge delivering the ballot, and the register number of the voter.

"2. The voter will then retire to a booth provided for that purpose, and there mark or stamp his ballot. If he wishes to vote a straight ticket he may place a cross in the square at the top of the column under the name of the party and for whose candidate he wishes to vote; *otherwise he will mark his ballot with an 'X' in the square opposite the name of each candidate whose name is printed on the ballot for whom he desires to vote.*

"3. If the voter desires to vote for any person whose name is not printed on the ballot, he shall write the name of such person on the blank lines immediately below the names of all the candidates printed on the ballot for the particular office for which he desires to vote for such person, and mark the same with an 'X' in the square opposite such blank line." (Emphasis supplied.)

It is manifest that A.R.S. § 16–834, subd. A constitutes a mandate to the voters and election officers with reference to the exact manner in which votes can legally be cast. The wording in the statute is clear, that the board of supervisors shall prepare the instructions for the guidance of the voters and election officers at the election, according to which the election "shall be conducted and which shall govern the voters and election officers." In Hunt v. Campbell, 19 Ariz. 254, 169 P. 596, this court held that the provisions of this statute must be strictly complied with. We held in that case that where a voter is instructed to put a cross-mark (X) in the box opposite the name of the person for whom he is voting, any other designation or mark placed in the box will not comply with the statute.

The California case of Sweetser v. Pacheco, 172 Cal. 137, 155 P. 639, 641, adopts the same rule as we established in Hunt v. Campbell, supra, and follow in this case to the effect that the method of casting a vote is mandatory rather than permissive. In the Sweetser case the California law provided that the cross (X) should be stamped in the square opposite the name of the nominee, whereas the voter used a lead pencil to put in the cross. The court said:

"The cases is simply one of no vote. As to ballot 'Novato 2–8,' all the crosses, including that in the voting square opposite Sweetser's name, were made with a lead pencil. What we have already said applies also to this ballot. In view of the provisions of section 1205, Political Code, the intent of the voter to vote for a particular candidate whose name is printed on the ballot can be expressed only by *stamping* a cross in, or at least partly in, the voting square. Lacking such stamped cross, the ballot cannot be counted for such candidate, even though the courts may feel that the voter in fact intended so to vote. The express language of the law forbids it."

There are cases in other jurisdictions contrary but they are not persuasive in view of the mandatory language of our statute and this court's prior declarations in Hunt v. Campbell, supra. While our statute may appear overly strict and harsh toward the timid or less sophisticated voter, it is a legislative choice and must be left to the legislature for remedy, as was done in A.R.S. § 16–950.

■ The statute provides only two means by which an elector may cast a vote for a candidate whose name is printed on the ballot. He must mark an "X" in the square under the party designation under which his candidate appears or in the square opposite his candidate's name. The only provision for write-in votes is for

candidates whose names are not printed on the ballot. The voters who cast the thirty-two contested ballots failed to comply with the mandatory provisions of this statute. We therefore hold that the thirty-two write-in ballots cast in the election for Sheriff of Pinal County in 1960 were illegally cast and should not be counted for either candidate. This leaves appellant with 6,290 votes and appellee with 6,282 votes.

The decision of the lower court is reversed and the appellant is declared to be the duly elected Sheriff of Pinal County, Arizona, and the costs of the election contest shall be paid by the appellee.