877 P.2d 277

Linda Lou MILLER, Ray Franklin Miller, George Luther Tallent, Margaret Lucille Tallent, Leonor F. Martan, Emil Keith Martan, Anita Rose Martan, Ronald Francis Pugliese, Kathleen Miller Parmeter, Cathleen Harris, Murrel Harris, Virginia Frances Beard, Plaintiffs/Appellees,

v.

PICACHO ELEMENTARY SCHOOL DISTRICT NO. 33, Superintendent Robert C. Noe, Governing Board President Abel Garza, Defendants/Appellants.

No. CV–93–0190–PR.

Supreme Court of Arizona, En Banc.

June 28, 1994.

Linda Lou Miller, et al., in pro. per.

Gilberto V. Figueroa, Pinal County Atty. by Linda L. Harant, Deputy County Atty., Florence, for defendants/appellants.

OPINION

MARTONE, Justice.

In this case we hold that absentee ballots procured in violation of our absentee ballot law are invalid, and if the ballots affect the outcome, the election must be set aside.

## I. Background

Voters in Picacho Elementary School District No. 33 contest the results of the school district's February 1992 budget override election. They allege that the district superintendent and other district employees were closely involved with the distribution and collection of absentee ballots in violation of A.R.S. § 16–542(B). They seek to invalidate all 41 absentee ballots and the election they affected.

After a bench trial, the superior court found that the district had violated A.R.S. § 16–542(B), which requires that absentee ballots be mailed to electors who ask for them and that only electors may possess ballots. None of the 41 absentee ballots were mailed. District employees personally delivered ballots to voters' homes. Judgment of Apr. 15, 1992, at 1. Before tabulating the absentee ballots, there were 60 *yes* votes and 87 *no* votes. The 41 absentee ballots favoring the override changed the result to 101 *yes* votes and 87 *no* votes. The

court, therefore, found that they "made a difference" in the election and voided them. *Id.* at 2. The court then set aside the election.

The Court of Appeals reversed in a 2–1 decision. *Miller v. Picacho Elementary Sch. Dist.*, 175 Ariz. 454, 857 P.2d 1308 (App. 1993). It held that improperly delivered ballots would not be voided absent a showing of actual fraud. Although the court recognized that the district violated the mailing requirement for the 41 absentee ballots, and school staff members encouraged some electors to vote for the override, it nevertheless determined that this affected, at most, only one voter. *Id.* at 456, 857 P.2d at 1310. As a result, the court confirmed the election. *Id.* at 457, 857 P.2d at 1311. The dissent was of the view that as long as ballots procured in violation of the law "affected the results of the override," *id.* at 458, 857 P.2d at 1312, actual fraud need not be shown.

We granted review because the integrity of the electoral process is an issue of statewide importance. Rule 23(c)(4), Ariz.R.Civ.App.P.

## II. *Analysis*

A.R.S. § 15–402(B) governs absentee voting in school elections and provides that the county school superintendent shall prescribe uniform rules for absentee voting in substantially the same manner as provided in Title 16 governing elections, A.R.S. § 16–542. Nothing in the record shows whether the superintendent adopted uniform rules under § 15–402(B). We therefore accept the parties' assumption that A.R.S. § 16–542 applies.

A.R.S. § 16–542(B), as amended January 1, 1992 and thus applicable to this election,[1] requires that "[t]he recorder or other officer in charge of elections shall mail postage prepaid to the requesting elector the absentee ballot ... Only the elector may be in possession of that elector's unvoted absentee ballot, either at his place of residence or at a location where he is temporarily residing while absent from his precinct."

The parties do not quarrel with the trial court's findings of fact. They agree that the statute applies and was violated. They differ over the significance of the violation and the rule applicable to testing its significance. Each rely on *Findley v. Sorenson*, 35 Ariz. 265, 276 P. 843 (1929), but draw very different conclusions from it. *Findley*, therefore, bears detailed scrutiny.

*Findley* involved a challenge to the election of a write-in candidate as trustee for a school district. Its unstated assumption was that the alleged irregularities would have violated the general election laws of Arizona, but not the special laws applicable to school district elections. *Id.* at 268–69, 276 P. at 844. The court did not state how the two differed, but it must have mattered or else the court would not have held that the general election laws did not apply and the special election laws did. Nevertheless, because the allegations did not show noncompliance with the special election laws, the court turned to the common law. But it chose a rule governing the effect of noncompliance with a statute, as though there were non-compliance.

[G]eneral statutes directing the mode of proceeding by election officers are deemed advisory, so that strict compliance with their provisions is not indispensable to the validity of the proceedings themselves, and [that] honest mistakes or mere omissions on the part of the election officers, or irregularities in directory matters, even though gross, if not fraudulent, will not void an election, unless they affect the result, or at least render it uncertain.

*Id.* at 269, 276 P. at 844.

The court also adopted a rule of construction "that in counting the ballots, the determination of the intent of the voter is the question of primary importance." *Id.* at 270, 276 P. at 844. Intent was to "be gathered from the ballot itself, read in the light of the surrounding circumstances of a public character, and not by extrinsic evidence contradicting the face of the ballot." *Id.*, 276 P. at 845. But this rule was "always subject to statutory mandates." *Id.*

---

1. A.R.S. § 16–542(C), replacing § 16–542(B), became effective January 1, 1994, and now broadly states that "[o]nly the elector may be in posses-

sion of that elector's unvoted absentee ballot." The residence limiting language has been deleted.

After stating these "rules," the court then acknowledged that none of the alleged irregularities violated school election laws. For example, the court upheld ballots upon which election officers wrote the name of a write-in candidate because "[t]here is no express prohibition in the school election law against such conduct." *Id.* at 271, 276 P. at 845. The court upheld contested ballots that "did not contain a cross at the right of the name of either candidate" because "the school election law does not expressly require that a mark be placed after the name of the candidate." *Id.* at 272–73, 276 P. at 845. The only ballots the court actually invalidated were those "cast for an entirely different office," which, of course, implicated no statute at all.

It can thus be seen that (1) *Findley* is confusing and (2) whatever it means, the instant case is nothing like *Findley*. This is a case in which a statute was expressly violated. We deal with the *Findley* dicta, quoted above, as follows.

 Contrary to *Findley*, election statutes are mandatory, not "advisory," or else they would not be law at all. If a statute expressly provides that non-compliance invalidates the vote, then the vote is invalid. If the statute does not have such a provision, non-compliance may or may not invalidate the vote depending on its effect. In the context of this case, "affect the result, or at least render it uncertain," *id.* at 269, 276 P. at 844, means ballots procured in violation of a non-technical statute in sufficient numbers to alter the outcome of the election.

 This is not a case of mere technical violation or one of dotting one's "i's" and crossing one's "t's." At first blush, mailing versus hand delivery may seem unimportant. But in the context of absentee voting, it is very important. Under the Arizona Constitution, voting is to be by secret ballot. Ariz. Const. art. VII, § 1. Section 16–542(B) advances this constitutional goal by setting forth procedural safeguards to prevent undue influence, fraud, ballot tampering, and voter intimidation. Here, the dangers were the very ones the statute was designed to prevent. District employees with a pecuniary interest in the override's passage delivered ballots to electors whom they knew. Although these electors did not ask for ballots, school employees urged them to vote and even encouraged them to vote for the override. District employees went to the homes of the electors and stood beside them as they voted. Even if the elector voted his or her conscience, the ballots still would never have been cast but for the procedures adopted by the district. Thus, testimony that the vote reflected the voter's intent is irrelevant. These tactics achieved the desired result— they turned the election around. These were substantive irregularities.

We therefore hold that a showing of fraud is not a necessary condition to invalidate absentee balloting. It is sufficient that an express non-technical statute was violated, and ballots cast in violation of the statute affected the election. We therefore vacate the opinion of the court of appeals and reinstate the judgment of the trial court setting aside the election.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.