FILED BY CLERK

MAR 29 2005

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

ANTHONY WENC,                              )
                                           )
            Contestant/Appellant,          )
                                           )
      v.                                   )        2 CA-CV 2004-0146
                                           )        DEPARTMENT A
SIERRA VISTA UNIFIED SCHOOL                )
DISTRICT NO. 68; COCHISE COUNTY,           )        O P I N I O N
ARIZONA, and ITS GOVERNING                 )
BOARD; and COCHISE COUNTY                  )
SCHOOL SUPERINTENDENT TRUDY                )
BERRY,                                     )
                                           )
            Contestees/Appellees,          )
                                           )
      and                                  )
                                           )
THOMAS W. SCHELLING, Cochise               )
County Elections Officer,                  )
                                           )
            Intervenor/Appellee.           )
                                           )

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CV200400373

Honorable Stephen M. Desens, Judge

AFFIRMED

Daniel F. Davis                                                    Tucson
                                          Attorney for Contestant/Appellant

Edward G. Rheinheimer, Cochise County Attorney
  By Candyce B. Pardee                                              Bisbee
                                                            Attorneys for
                                          Contestees/Intervenor/Appellees

_____

E C K E R S T R O M, Judge.


¶1        We consider only one issue in this case:  Whether a school district budget override election should be set aside because it was canvassed by a county employee whose authority to do so had not been established in accordance with the technical requirements of A.R.S. § 38-461.[1]  Because we must interpret the legislature's intent as expressed by statute to answer that question, our review is *de novo*.  *See Mackey v. Mayor of Tucson*, 208 Ariz. 527, ¶ 8, 96 P.3d 231, 233 (App. 2004).  Based on that intent, we reject appellant's request to set aside either the canvass or the election because the technically improper canvass did not affect the election result.

_____

[1]Appellant also challenges the reliability of the voting machines Cochise County used in the override election.  Although he elicited testimony exploring the operation of the machines, he did not specifically challenge the use of those machines below or otherwise contest the election on that basis.  Moreover, he does not seek any relief on appeal based on his critique of those machines.  Accordingly, we do not address that challenge.  *See Orfaly v. Tucson Symphony Society*, 209 Ariz. 260, ¶ 15, 99 P.3d 1030, 1035 (App. 2004) (arguments raised for the first time on appeal are untimely and are therefore deemed waived).

**Background**

¶2          The relevant facts are not disputed. On May 18, 2004, the Sierra Vista Unified School District held a budget override election pursuant to A.R.S. § 15-481. The canvass of returns was scheduled for June 4 and was to be conducted by Patrick Call, the Chairman of the County Board of Supervisors, and Trudy Berry, the Cochise County School Superintendent. However, a family emergency prevented Berry from attending the canvass, so she appointed Deborah Andrade, her administrative assistant, to act on her behalf. Berry neglected to file any papers in the county recorder's office to officially confer that authority on Andrade. The election was certified as scheduled, and both Call and Andrade signed the official results. The budget override passed by seventy-five votes.

¶3          Anthony Wenc filed a challenge to the election five days later, presenting the trial court with a host of jurisdictional, procedural, and technical legal claims. The court found that no "material or substantive irregularities or defects" had tainted the election, denied relief on all grounds, and authorized the school district to commence its budgeting process. Although the trial court found that Andrade had not been "recorded as a deputy" by Superintendent Berry under A.R.S. § 38-461, it concluded that A.R.S. § 38-462 provided statutory authority for Andrade to canvass the vote nonetheless. This appeal followed.[2]

_____

[2]Wenc asks us to invalidate the canvass, but never specifically asks us to invalidate the election. However, he argues that the deadlines have passed for the County to conduct another canvass in compliance with A.R.S. § 15-426(B). Because an election result has no legal effect in the absence of a canvass, *see Shepherd v. Brumback*, 148 Ariz. 280, 283-85, 714 P.2d 450, 453-55 (App. 1985), we construe his request to invalidate the canvass as an

3

**Discussion**

**¶4**        Wenc argues that, because Berry neglected to file and record Andrade's appointment as a deputy in accordance with § 38-461, Andrade lacked the authority to act in Berry's stead under § 38-462 and to canvass the election as required by A.R.S. § 15-426. The County responds that compliance with § 38-461 was unnecessary because, under these circumstances, Andrade was acting under the authority of § 38-462, which grants deputies the power to act on behalf of county officers and which contains no additional provision setting forth any technical requirements for exercising that power.

**¶5**        Under A.R.S. § 15-426(B), the canvass of a school budget override election must be conducted by the county school superintendent. Section 38-462(A) authorizes a county officer's deputy to "perform the duties prescribed by law" for the officer. Accordingly, the canvass of the bond could be conducted by a deputy of Berry. Section 38-461, in turn, authorizes every state officer to "appoint deputies and assistants when authorized by law, and [to] . . . appoint clerks and employees for the prompt discharge of the duties of the office," § 38-461(A), but requires that such appointments of "deputies, assistants or clerks . . . shall . . . be in writing and recorded in the office of the county recorder." § 38-461(C); *see also* A.R.S. § 11-409 (requiring written and filed appointments of "deputies, . . . clerks and assistants").

---

implicit request to set aside the election result.

4

¶6      In determining the meaning of a statute, our primary objective is to discern and give effect to the intent of the legislature. *Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 103, 859 P.2d 724, 726 (1993). We focus on the language of the relevant provisions, and if that language is subject to different interpretations, we then consider "other sources of legislative intent such as the statute's context, historical background, consequences, spirit and purpose." *Id*. at 104, 859 P.2d at 727.

¶7      Read in isolation, § 38-462(A) authorizes a deputy to perform any duties prescribed by law for the county officer and requires no additional procedural steps for the deputy to act in the official's capacity.[3] But § 38-462 does not address the manner by which a person becomes a deputy. As noted above, § 38-461(C) specifies that "[t]he appointment of deputies, assistants or clerks by county officers or boards shall, except as otherwise provided, be in writing and recorded in the office of the county recorder." Reading the two provisions together, we find their meaning to be clear: Section 38-461 articulates the manner in which a county officer may appoint a deputy, while § 38-462 specifies the scope of that deputy's power.

¶8      In addressing this question, the trial court, in effect, construed § 38-462 as a provision that eliminates the technical requirements for appointing a deputy except in those rare cases in which the official seeks to appoint a nonemployee to perform a specific task.

_____

[3]That provision reads in full as follows: "Unless otherwise provided, each deputy of a state or county officer possesses the powers and may perform the duties prescribed by law for the office of the principal."

5

But we find no language in that section indicating any such legislative intent. In the absence of such language, we decline to interpret § 38-462 as permitting the creation of *de facto* deputies—an interpretation that would render the requirements of § 38-461(C) superfluous except under the most extraordinary circumstances. *See Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991) (court "must read the statute as a whole, and give meaningful operation to all of its provisions" whenever possible). The County suggests that we should characterize Andrade as a deputy under the provisions of § 38-462 because she was an employee delegated to conduct the canvass by the appropriate county officer. But § 38-461 erects additional procedural requirements for appointing a deputy as distinguished from appointing an employee to perform a task. *Compare* § 38-461(A) (state officer "may appoint clerks and employees for the prompt discharge of the duties of the office") *with* § 38-461(C) (appointment of "deputies, assistants or clerks . . . shall . . . be in writing and recorded in the office of the county recorder"). Because Berry failed to appoint Andrade as her deputy in writing and to record that appointment in the county recorder's office, Andrade did not possess the powers conferred on deputies by § 38-462. Accordingly, Andrade did not possess the legal authority to conduct the canvass on Berry's behalf.

¶9          That error, however, does not compel us to void the canvass or, ultimately, the election result. At oral argument, Wenc suggested we would elevate "personal sentiment" over the law if we upheld the election outcome notwithstanding the County's noncompliance with the technical requirements of the canvassing statute. But, in the

6

absence of any specific legislative instruction that such an error requires us to overturn the result of an election, we must be cognizant that "'[i]t is the object of elections to ascertain a free expression of the will of the voters,'" *Clifton v. Decillis*, 187 Ariz. 112, 116, 927 P.2d 772, 776 (1996), *quoting Territory v. Bd. of Supervisors*, 2 Ariz. 248, 253, 12 P. 730, 732 (1887), and, so, "the determination of the intent of the voter is the question of primary importance." *Findley v. Sorenson*, 35 Ariz. 265, 270, 276 P. 843, 844 (1929).

¶10        In accord with this principle, we first determine whether the relevant election statute provides any legislative guidance on the appropriate remedy for noncompliance. "If a statute expressly provides that noncompliance invalidates the vote, then the vote is invalid." *Miller v. Picacho Elementary Sch. Dist. No. 33*, 179 Ariz. 178, 180, 877 P.2d 277, 279 (1994). If the statute does not contain such a provision, we will not set aside an election unless the effect of the noncompliance altered the outcome or clouded the reliability of the results. *Id.; see also Clifton*, 187 Ariz. at 116, 927 P.2d at 776 (when only substantial compliance with law is required, court will not set aside election unless result was affected by irregularity).

¶11        The relevant statute permitting school budget override elections, A.R.S. § 15-481, does not demand strict compliance with the procedures for conducting those elections. To the contrary, the legislature only requires that such elections be conducted "as nearly as practicable" in conformity with the canvassing requirements for budget override elections

7

set forth in A.R.S. § 15-426. § 15-481(D). Thus, we would not set aside the canvass or election unless Berry's failure to properly certify Andrade affected the outcome of the vote.

**¶12** Wenc has made no such argument and does not suggest that Andrade was either incompetent or dishonest in conducting the canvass. In fact, Wenc makes no complaint whatsoever about how Andrade behaved when she conducted the canvass on Berry's behalf. Nor does Wenc dispute that the election was free and fair—untainted by fraud.[4] Thus, although we conclude that Berry failed to comply with the requirements of the law when she delegated Andrade to conduct the canvass, we affirm the trial court's judgment rejecting Wenc's request to void the canvass or the election because of that oversight. *See Ry-Tan Constr., Inc. v. Washington Elementary Sch. Dist. No. 6*, 208 Ariz. 379, ¶ 45, 93 P.3d 1095, 1109 (App. 2004) (we may affirm a trial court's decision if it is correct for any reason).

**¶13** The judgment of the trial court is affirmed.

_____
PETER J. ECKERSTROM, Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Presiding Judge

---

[4]Thomas Schelling, Cochise County Elections Officer, testified that there was no sign of fraud in the election and that it had been conducted in accordance with Arizona law.

8

_____
PHILIP G. ESPINOSA, Judge