IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

_____

DANIEL LACHANCE, HENRY STEPHEN CONROY,
YVONNE MAYER, AND ROBERT MCCORMICK,
*Plaintiffs/Appellants/Election Contestors*,

*v.*

COUNTY OF COCHISE; COCHISE COUNTY JAIL DISTRICT;
BOARD OF SUPERVISORS OF COCHISE COUNTY;
AND THE FOLLOWING IN THEIR OFFICIAL CAPACITIES:
SUPERVISORS ANN ENGLISH, PEGGY JUDD, AND TOM CROSBY;
COCHISE COUNTY RECORDER; AND
COCHISE COUNTY ELECTIONS DIRECTOR,
*Defendants/Appellees/Election Contestees*.

No. 2 CA-CV 2023-0236
Filed June 25, 2024

_____

Appeal from the Superior Court in Cochise County
No. S0200CV202300363
The Honorable David Thorn, Judge

**AFFIRMED IN PART;
REVERSED IN PART AND REMANDED**

_____

COUNSEL

Charles R. Johnson, Scottsdale
*Counsel for Plaintiffs/Appellants/Election Contestors*

Brian McIntyre, Cochise County Attorney
By Christine J. Roberts, Chief Civil Deputy County Attorney and Paul
Correa, Civil Deputy County Attorney, Bisbee
*Counsel for Defendants/Appellees/Election Contestees*

**OPINION**

Judge Sklar authored the opinion of the Court, in which Vice Chief Judge Staring and Judge O'Neil concurred.

S K L A R, Judge:

¶1		This appeal arises from an election contest involving a jail-district election.  It requires us to determine whether voters on a state-mandated "inactive voter list" were entitled to receive ballots in the district's all-mail election.  We conclude that they were.

¶2		The contest concerns a May 2023 election, in which Cochise County voters approved the jail district's creation, as well as the imposition of an accompanying tax.  As authorized by A.R.S. § 16-558, the election was conducted entirely by mail.  Four county residents, the "Contestors," then filed this contest.  They argued that the county had disenfranchised approximately 11,000 voters on the inactive list by failing to send them ballots.  The superior court granted a motion to dismiss the complaint.  It concluded that Contestors had failed to state a claim under Arizona's election-contest statutes.

¶3		We conclude that the superior court erred.  Assuming as we must that Contestors' well-pled factual allegations are true, they have stated a claim.  Because this was an all-mail election, the county was required to mail ballots to "each qualified elector entitled to vote in the election."  A.R.S. § 16-558.01.  Qualified electors include those on the inactive list.  But the county failed to mail ballots to those voters, thus disenfranchising them.  Contestors are therefore entitled to proceed with their claim.  However, the superior court properly concluded that Contestors failed to state a claim on several other grounds for the contest.  These include Contestors' allegation that the tax required sixty percent of the votes and that the Cochise County Attorney lacked the power to defend this case.  We therefore affirm the court's dismissal on those grounds.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4		In November 2022, the Cochise County Board of Supervisors formed the jail district, a special taxing district, to construct a new jail. The jail would be financed by an excise tax, subject to voter approval at an election held in May 2023.  According to official election results, 12,891

voters supported the tax, and 12,141 voters opposed it. We take judicial notice of these results. *Cf. Bolin v. Superior Court*, 85 Ariz. 131, 136 (1958); Ariz. R. Evid. 201.

¶5 In June 2023, Contesters filed a statement of contest under A.R.S. §§ 16-672 and 16-674. The defendants, collectively "the County," moved to dismiss for failure to state a claim upon which relief can be granted. Thereafter, Contestors filed an Amended Statement of Contest and an application for default judgment. After a hearing, the superior court granted the motion to dismiss the matter with prejudice. This timely appeal followed.

## JURISDICTION

¶6 Preliminarily, we must address whether the superior court had jurisdiction. *See Dowling v. Stapley*, 221 Ariz. 251, n.13 (App. 2009) ("Generally, subject matter jurisdiction of the superior court cannot be waived."). The right to contest an election is created by statute, which defines the means and manner of effectuating that right. *See Donaghey v. Att'y Gen.*, 120 Ariz. 93, 95 (1978). Thus, the time limits to contest an election under Arizona's election-contest statutes are "mandatory, and unless strictly complied with [t]he court is without jurisdiction to proceed." *Id.*

¶7 The statement of contest was required to be filed within five days after completion of the canvass of the election and declaration of the election result. *See* A.R.S. §§ 16-673(A), 16-674(A). In special-district elections, the canvass is not complete until a presentation to the board of supervisors is conducted. A.R.S. § 16-642(B).

¶8 Here, the results were certified on May 25, and the presentation to the Cochise County Board of Supervisors occurred on June 6. Contestors filed their statement of contest on June 12. Although this was six calendar days after the canvass was completed, the fifth day to file the statement of contest was a Sunday.

¶9 In a nominating-petition challenge, our supreme court determined that "if the fifth day for filing an election appeal falls on a Saturday, Sunday, or state holiday, a notice of appeal will be deemed timely if filed on the next business day." *Bohart v. Hanna*, 213 Ariz. 480, n.2 (2006). It reached the same conclusion concerning election contests, albeit in an unpublished decision order. *Burk v. Ducey*, 2021 WL 1380620, *1 (Ariz. Jan. 6, 2021); *accord* A.R.S. §§ 1-301(A)(1), 1-303. We do the same and conclude

that the statement of contest was timely. Thus, the superior court had jurisdiction and, given the timely notice of appeal, we do as well.

**MOTION TO DISMISS**

**¶10** Section 16-672 authorizes electors to contest an election, including the result of any "question or proposal submitted to the vote of the people." A contest may be raised only on five enumerated grounds. Contestors raise three: (a) "misconduct" by certain officials; (b) "illegal votes"; and (c) an "erroneous count of votes." § 16-672(A)(1), (4)-(5); *see also* § 16-674(A) (same grounds and manner for contesting county and local elections).

**I.      Standard of review**

**¶11** Arizona has a "strong public policy favoring stability and finality of election results." *Donaghey*, 120 Ariz. at 95. Consistent with this policy, for more than a century, official returns have been deemed prima facie evidence of the number of votes cast. *Hunt v. Campbell*, 19 Ariz. 254, 268 (1917). Even substantive irregularities do not supply a basis for invalidating an election if they do not affect the result or render it uncertain. *Miller v. Picacho Elem. Sch. Dist. No. 33*, 179 Ariz. 178, 180 (1994). Thus, unless a "statute expressly provides that non-compliance invalidates the vote," a challenger must show that ballots were "procured in violation of a non-technical statute in sufficient numbers to alter the outcome of the election." *Id.*

**¶12** Because this is an appeal from the grant of a motion to dismiss for failure to state a claim upon which relief can be granted, we must apply this standard through the lens of Rule 12(b)(6) of the Arizona Rules of Civil Procedure. *See Lake v. Hobbs*, 254 Ariz. 570, ¶ 25 (App. 2023), *vacated in part on other grounds,* No. CV-23-0046-PR (Ariz. Mar. 22, 2023) (order) (considering election contest under Rule 12(b)(6) standard). Under Rule 12(b)(6), dismissal is appropriate if "as a matter of law . . . plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Coleman v. City of Mesa*, 230 Ariz. 352, ¶ 7 (2012) (quoting *Fid. Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, ¶ 4 (1998)). We assume the truth of all well-pled factual allegations and indulge all reasonable inferences. *Id.* ¶ 9. We review the superior court's ruling de novo. *Id.* ¶ 7.

**II.    Whether Contestors stated a claim for illegal votes under Section 16-672(A)(4)**

¶13        We first address Contestors' claim that the County accepted illegal votes in violation of A.R.S. § 16-672(A)(4).  Their illegal-votes claim relies on the alleged disenfranchisement of the inactive voters.

**A.    Procedural issues**

¶14        Before addressing the illegal-votes claim substantively, we must resolve two procedural questions:  (1) whether the claim was timely asserted after the election; and (2) whether we may consider the factual allegations in the Amended Statement of Contest despite it having been filed after the five-day deadline.

**1.    Whether the claim was timely asserted**

¶15        The County argues that Contestors' challenge regarding the disenfranchised voters was a procedural challenge that is time barred because it was not brought before the election.  At oral argument, the County further asserted that Contestors have no post-election remedy for disenfranchisement.

¶16        Our supreme court recently stated, "It is well-established that a litigant must challenge pre-election procedures prior to the election." *Ariz. Republican Party v. Richer*, No. CV-23-0208-PR, ¶ 26, 2024 WL 1922203 (Ariz. May 2, 2024).  However, this court concluded in *Moore v. City of Page*, 148 Ariz. 151, 154-56 (App. 1986), that a claim of voter disenfranchisement is not a pre-election procedural challenge.  Like in this case, the contestors in *Moore* challenged the results of a special election.  They asserted that voters were disenfranchised because ineligible electors were allowed to vote.  *Id.*  This court concluded that the contest could be brought after the election.  *Id.*; *see also Miller*, 179 Ariz. at 179-80 (involving post-election challenge to conduct in procuring votes from absentee voters).

¶17        The same analysis applies here.  Contestors' challenge relates not to pre-election procedures, but to the election itself.  Contestors had no practical way to know that inactive voters would be prevented from voting until after the election had begun.  Moreover, the County has not explained how Contestors could have meaningfully challenged the disenfranchisement before the election.  Ballots can be mailed as late as fifteen days before election day.  A.R.S. § 16-558.01.  The County has identified no procedure that would have allowed Contestors' challenge to

be raised and resolved while still leaving inactive voters sufficient time to receive and cast ballots. Nor can we discern how this could happen in practice. Contestors' challenge was timely.

### 2. Timeliness of Amended Statement of Contest

¶18 We next address the Amended Statement of Contest's role in our analysis. Contestors initially raised many of their factual allegations in that document, where they explained among other things that the 11,000 assertedly disenfranchised voters were those that the county had placed on the "inactive voter list."

¶19 The amended statement was filed well beyond the statutory five-day deadline for initiating election contests. Amendments beyond the deadline are permitted, but not to the extent that they "set up new grounds of contest" or supply the court with jurisdiction that it would not otherwise have. *Grounds v. Lawe*, 67 Ariz. 176, 186 (1948). By contrast, post-deadline amendments may supply additional facts to support an otherwise timely contest. *See id.* The additional factual detail concerning the inactive voters fits this latter description. It therefore was timely, and we may consider it in our analysis.

### B. Whether Contestors' allegation of disenfranchisement is cognizable as a claim for illegal votes

¶20 We must next determine whether Contestors' claim is cognizable as asserting illegal votes. The case law does not clearly define an illegal-vote claim, but most such cases involve ineligible voters being allowed to vote. For example, in *Moore*, the alleged failure to properly purge voter-registration lists supported an illegal-vote claim. 148 Ariz. at 156. Likewise, the court in *Grounds* characterized a claim as involving "illegal votes" where votes were cast by non-residents. 67 Ariz. at 182; *see also Huggins v. Superior Court*, 163 Ariz. 348, 349 (1990) (registered independents and non-partisans improperly allowed to vote in primary election); *Clay v. Town of Gilbert*, 160 Ariz. 335, 337-38 (App. 1989) (non-residents of town allowed to vote in town election).

¶21 This case involves the opposite concern—disenfranchisement of eligible voters. Some cases appear to have considered disenfranchisement allegations as involving illegal votes. Most recent was *Moore*. Aside from the allegations discussed above, that case involved a claim that a city had disenfranchised voters by providing an improperly

brief voter-registration period. *Moore*, 148 Ariz. at 157. The court did not specifically describe this allegation as asserting "illegal votes." However, it described the "gist" of the contest as asserting either illegal votes or an "offense against the elective franchise" committed by the "person whose right is contested." *Id.* at 155 (citing A.R.S. § 16-672(A)(3)).

¶22 Another case involved an election that was held in a different building and at a different time than had been designated. *Chenoweth v. Earhart*, 14 Ariz. 278, 279-80, 285 (1912). That could have had the practical effect of disenfranchising voters. One ground for that challenge was illegal voting, although the case also involved misconduct allegations. *Id.* at 279. Similarly, in *Donaghey*, our supreme court suggested that an election contest is the proper vehicle for bringing a disenfranchisement claim when an elector alleged that she had been improperly denied an absentee ballot. 120 Ariz. at 95. It did not, however, specify the illegal-votes ground. *Id.*

¶23 This case law indicates that Section 16-672(A)(4)'s "illegal votes" ground encompasses disenfranchisement. Like when ineligible voters cast ballots, disenfranchisement involves a distortion of the power of properly cast votes. In ineligible-vote cases, that power is diluted. In disenfranchisement cases, that power is amplified. We therefore conclude that Contestors' disenfranchisement claim is cognizable under subsection (a)(4).

## C. Merits of Contestors' illegal-vote claim

¶24 Turning to the merits, we start with A.R.S. § 16-558, which allows special taxing districts to conduct "a mail ballot election if the governing board of the special district obtains approval from the board of supervisors." The jail district here is a special taxing district created by the Cochise County Board of Supervisors under A.R.S. § 48-4001(A). However, that district could not be established until "voter approval of a property tax or excise tax" under Section 48-4021.

¶25 Section 48-4021 imposes certain procedures concerning the election. Among other things, it requires that the jail district's board of directors distribute "publicity pamphlets concerning the tax issue proposed." § 48-4021(C). A copy of the pamphlet must be distributed "to each household containing a registered voter in the district." *Id.* For purposes of that statute, A.R.S. § 16-193 defines "registered voter[]" as "only active registered voters."

¶26      However, Sections 16-193 and 48-4021 do not address who should receive ballots. Resolving this question requires looking to Section 16-558.01. That statute provides that in all-mail special-district elections, the county recorder must mail a ballot "to each qualified elector entitled to vote in the election." This language mirrors Section 16-541(B), which provides that a "qualified elector of a special district . . . shall be permitted to vote early in any special district mail ballot election as provided" by applicable law. Under these two statutes, "qualified elector[s]" are entitled to ballots.

¶27      "Qualified elector" is defined in A.R.S. § 16-121(A). Relevant here, that statute describes a "qualified elector" as a person who is "properly registered to vote." It also provides that a person remains a "qualified elector" until that person's registration is canceled under Section 16-165. Cancellation is required under several circumstances, including "[w]hen a person has been on the inactive voter list and has not voted" within specified time periods. § 16-165(A)(7).

¶28      Section 16-166(C) requires the county recorder to include two groups of people on the inactive-voter list: (1) those from whom certain election material has been returned undeliverable and who did not provide a new address upon follow-up, and (2) those who appear to have recently moved but have not updated their voter registration or otherwise responded to the recorder's correspondence. A.R.S. § 16-166(A),(E). Section 16-166(C) requires that members of these two groups be kept on the list for either four years, or "through the date of the second general election for federal office following the date of the notice" sent to members of the second group. As noted, once that period expires, Section 16-165(A)(7) requires inactive voters' registration to be canceled.

¶29      When that occurs, Section 16-121(A) provides that such voters cease to be "qualified electors." That means, however, that they remain "qualified electors" while on the inactive-voter list. In all-mail elections, they are thus entitled to ballots under Section 16-558. *But see* A.R.S. § 48-620(G) (providing for "registered voters and property owners within the district" to receive "simplified ballot cards" in all-mail elections concerning underground utility improvement districts); *see also* § 16-193 (defining "registered voters" as "active registered voters" for purposes of mailing ballots under Section 48-620). This is true even though it leads to the anomaly that inactive voters are entitled to ballots but not publicity pamphlets in jail-district elections. We will not construe the statutes in contradiction of their plain meaning to correct this anomaly. *See City of*

8

*Phoenix v. Butler*, 110 Ariz. 160, 162 (1973) ("[I]t is not the function of the courts to rewrite statutes.").

¶30        At oral argument, the County proposed a different interplay among the statutes. It focused on Section 16-558's requirement that qualified electors be "entitled to vote in the election." Under the County's theory, inactive voters are not so entitled because Section 16-193 limits the term "registered electors" to "active registered voters" for purposes of Section 48-4021. We are unpersuaded. Even if we read "entitled to vote in the election" as authorizing other statutes to restrict qualified electors from voting, Sections 16-193 and 48-4021 impose no such restriction. As we have explained, those statutes say nothing about who is entitled to ballots in jail-district elections. We therefore conclude that Contestors have stated a claim for illegal votes on the ground that the County improperly disenfranchised inactive voters.

### D.        Contestors' remedy on illegal-vote claim

¶31        We next address the proper remedy. At oral argument, Contestors argued that we should direct the superior court to enter judgment in their favor. They rely on a declaration they submitted in connection with a summary-judgment motion. The court did not resolve that motion because it granted the motion to dismiss. In Contestors' view, that declaration proves that the inactive voters would have voted "no" in sufficient numbers to affect the election's outcome.

¶32        However, the superior court properly did not consider that declaration in ruling on the motion to dismiss, which is the only matter before us on appeal. *Coleman*, 230 Ariz. 352, ¶ 9 ("'Courts look only to the pleading itself' when adjudicating a Rule 12(b)(6) motion.") (quoting *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, ¶ 6 (2008)). Nor did the court need to decide the summary-judgment motion given that it granted the motion to dismiss. We decline Contestors' invitation to decide the summary-judgment motion in the first instance. *See Reid v. Reid*, 222 Ariz. 204, ¶ 16 (App. 2009) (appellate courts generally will not address issues for the first time on appeal). Instead, we remand to the superior court for further proceedings.

¶33        Relevant to the remand but not the motion to dismiss, the County acknowledged in an answer to the complaint that it did not send ballots to the inactive voters. Thus, on remand, there will be no factual dispute on this point. *See Schwartz v. Schwerin*, 85 Ariz. 242, 249 (1959) ("The law is well settled that an admission in an answer is binding on the party

making it, and is conclusive as to the admitted fact.").  The remaining issue for the superior court to determine is whether "the illegal votes were sufficient to change the outcome of the election."  *Huggins*, 163 Ariz. at 353 (margin of victory must be exceeded by number of invalid votes after applying proportionate deduction); *Lake*, 254 Ariz. 570, ¶¶ 9-10 (clear and convincing evidence required).

### III.  Whether Contestors stated a claim for misconduct under Section 16-672(A)(1)

¶34        Contestors also raise claims under A.R.S. § 16-672(A)(1), which allows an election to be contested for "misconduct on the part of election boards or any members thereof in any of the counties of the state, or on the part of any officer making or participating in a canvass for a state election."  Local elections may be contested on the same basis.  § 16-674(A).

¶35        Contestors allege two principal types of misconduct.  First they allege that the County violated the applicable election statutes by disenfranchising the approximately 11,000 inactive voters.  However, we have already concluded that the disenfranchisement argument is cognizable under subsection (A)(4) as involving illegal votes.  Whether it is also cognizable as misconduct makes no difference on remand given the County's admission in its answer that it did not mail ballots to inactive voters.  The standard for reversing an election is the same in both illegal-vote and misconduct cases, namely, whether the disenfranchisement affected the election's outcome.  *See Lake*, 254 Ariz. 570, ¶ 11 (providing that both misconduct and illegal votes must affect votes "'in sufficient numbers to alter the outcome of the election'") (quoting *Miller*, 179 at 180).  We therefore decline to address whether the disenfranchisement allegations are cognizable as alleging misconduct.

¶36        Second, Contestors allege that the County improperly failed to appoint an election board.  However, Contestors did not raise this claim in their original statement of contest.  They did so only in the Amended Statement of Contest which, as we have explained, was not filed within the five-day statutory deadline.  Because this was an additional ground, not an explanation of an original ground, it could not be asserted in the amended statement.  *See* A.R.S. §§ 16-673(A), 16-674(A).  The superior court therefore properly dismissed it.  *See Grounds*, 67 Ariz. at 186; *Donaghey*, 120 Ariz. at 95.

¶37        In addition, Contestors' opening brief refers to other "detailed allegations" of misconduct.  However, Contestors do not attempt to further

develop any argument as to these additional grounds of misconduct. We therefore deem those arguments waived. *See In re Aubuchon*, 233 Ariz. 62, ¶ 6 (2013) (applying waiver to arguments not supported by adequate explanation, citations to the record, or authority).

## IV. Whether Contestors stated a claim for an erroneous count of votes under Section 16-672(A)(5)

**¶38** Contestors' next claim arises under Section 16-672(A)(5), which allows a contest where an "erroneous count of votes" resulted in the measure not receiving "a sufficient number of votes to carry." Contestors argue that the tax measure, which received just over fifty percent of the votes, was actually an initiative that required sixty percent. We review this issue de novo, as it requires us to interpret constitutional and statutory provisions. *See Johnson Utilities, L.L.C. v. Ariz. Corp. Comm'n*, 249 Ariz. 215, ¶ 11 (2020).

**¶39** The Arizona Constitution reserves for the people the power to propose and enact laws through the initiative process. Ariz. Const. art. IV, pt. 1, § 1(1). That power extends to "all local, city, town or county matters on which such incorporated cities, towns and counties are or shall be empowered by general laws to legislate." Ariz. Const. art. IV, pt. 1, § 1(8). To exercise the initiative power, proponents must obtain a threshold number of signatures, which results in the initiative being placed on the ballot. *See* Ariz. Const. art. IV, pt. 1, § 1(2), (4), (8)-(9); *see also* A.R.S. § 19-102. Under a constitutional amendment adopted in 2022, an initiative that approves the imposition of a tax must obtain sixty percent of the votes to become law. Ariz. Const. art. IV, pt. 1, § 1(5).

**¶40** Contrary to Contestors' argument, the tax measure at issue was not an initiative. It was not proposed by the electorate. *See* Ariz. Const. art. IV, pt. 1, § 1(2) (under the power of initiative "qualified electors shall have the right to *propose* any measure") (emphasis added). Rather, it was proposed by the Cochise County Board of Supervisors and the Board of Directors of the Cochise County Jail District and submitted to the electorate under A.R.S. § 48-4021(B). The constitutional provisions concerning initiatives are therefore not applicable.

**¶41** Contestors argue, however, that A.R.S. §§ 48-4021 to 48-4023 violate the Arizona Constitution. In their view, measures may not be submitted to voters unless the signature requirement for initiatives has been satisfied. But the constitution contains no such limitation. While it reserves the initiative power for the people, it does not restrict legislative

bodies' power to present other measures to voters. It also provides that the initiative power shall not "be construed to deprive or limit the legislature of the right to order the submission to the people at the polls of any measure, item, section or part of any measure." Ariz. Const. art. IV, pt. 1, § 1(15). *See* Ariz. Const. art. IV, pt. 1, § 1(1); *Feldmeier v. Watson*, 211 Ariz. 444, ¶ 7 (2005) ("The initiative process reserves to the people the power to propose to the electorate laws and amendments to the constitution."). Thus, the election did not require sixty percent of the votes to pass.

## PETITION TO INSPECT BALLOTS

**¶42**        Contestors argue that the superior court erred in denying their petition to inspect the ballots. After a statement of contest has been filed and the action is at issue, either party has a right to have the ballots inspected after filing a verified petition stating that the party cannot adequately prepare for trial without the inspection. *See* A.R.S. § 16-677(A)-(B). Given our conclusion that the court erred in dismissing the contest, we do not address this issue. We leave it instead to the parties and the court on remand.

## MOTIONS FOR DEFAULT JUDGMENT AND
## JUDGMENT ON THE PLEADINGS

**¶43**        Contestors also argue that the superior court erred in denying their motions for default judgment and judgment on the pleadings. In those motions, Contestors asserted that the Cochise County Attorney's Office was not authorized to defend against this election contest and that the motion to dismiss did not qualify as a timely answer under A.R.S. § 16-675(A).

**¶44**        The county attorney is authorized by statute to "defend actions brought against the county" and "oppose claims against the county that the county attorney deems unjust or illegal." A.R.S. § 11-532(A)(4), (9); *see also Romley v. Daughton*, 225 Ariz. 521, ¶ 19 (App. 2010) ("The county attorney of each county also has a duty . . . and the authority . . . to represent the county in civil litigation."). As Contestors point out, the board of supervisors is vested with the final authority to "[d]irect and control" and "compromise" such actions where the county is a party. A.R.S. § 11-251(14). However, that statute does not obligate the county attorney to await authorization from the board before defending. Rather, it gives the county attorney independent authority to "deem[]" a claim unjust or illegal, then proceed to defend against it. That is precisely what occurred here.

**¶45**         In addition, the county attorney did not fail to file a timely answer under Section 16-675.   Under that statute, once a statement of contest has been filed and the summons has been served, the opposing party has five days to file an answer.  *Id.*  A motion to dismiss is treated as an answer for purposes of Section 16-675.  *See Prutch v. Town of Quartzsite*, 231 Ariz. 431, ¶¶ 16-18 (App. 2013).  Contestors' statement of contest was filed on June 12, 2023.  Even assuming that the summons was served on the same day, the motion to dismiss was timely.  The answer deadline would have been June 17, a Saturday.  The motion to dismiss was timely filed on Monday, June 19.  *See Bohart*, 213 Ariz. 480, n.2.

## ATTORNEY FEES

**¶46**         Contestors request an award of attorney fees on appeal.  Rule 21 of the Arizona Rules of Civil Appellate Procedure requires them to identify the legal basis for such an award in their opening brief.  Ariz. R. Civ. App. P. 21(a)(1)-(2).  They did not.  Instead, they asked at oral argument that we excuse this failure and award them fees anyway.  We see no basis for doing so and therefore deny their request.  *See* Ariz. R. Civ. App. P. 21(a)(2).   Contestors are entitled to their taxable costs on appeal upon compliance with Rule 21.

**¶47**         The County requests an award of attorney fees as a sanction under A.R.S. § 12-349.  Because Contestors have prevailed in part on their appeal, the County's request is denied.  *See* § 12-349(F).

## DISPOSITION

**¶48**         We reverse the superior court's dismissal concerning the allegation that the County improperly failed to mail ballots to inactive voters.  We affirm the dismissal in all other respects and remand for further proceedings consistent with this opinion.